RICE et al., Appellants,

v.

CITY OF MONTGOMERY, Appellee.

[Cite as *Rice v. Montgomery* (1995), 104 Ohio App.3d 776.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940017.

Decided June 21, 1995.

*Rice & Fiala* and *James K. Rice,* for appellants.

*Frost & Jacobs* and *Richard M. Goehler,* for appellee.

*Dinsmore & Shohl* and *John W. Beatty,* for *amici curiae* Procter & Gamble Company, Kroger Company, General Electric Company, Chemed Corporation, and Eagle–Picher Industries.

---

PAINTER, Judge.

The plaintiffs-appellants, Ronald R. and Beverly D. Rice, appeal from the judgment of the common pleas court which affirmed the determination of the city of Montgomery Board of Tax Appeals that the Rices' exercise of a stock option given by Ronald Rice's employer is subject to municipal income taxation. For the reasons stated below, we affirm.

## I. Facts

Prior to 1988, Ronald Rice received stock options from his employer, the Kroger Company. In 1988, Ronald Rice exercised these stock options, paid the option price per share, and received Kroger stock. The fair market value of the stock Ronald Rice received exceeded the option price by $584,962. The Kroger Company properly reported this income to Rice on his I.R.S. form W–2 for 1988.

The Rices timely filed a 1988 city of Montgomery tax return and excluded the stock option income. Montgomery conducted an audit review of the Rices' return and included the stock option income, resulting in an assessment of additional taxes of $4,720.

The Rices appealed to the Montgomery Board of Tax Review, which affirmed the city tax commissioner's ruling. The Rices then appealed to the court of common pleas, which affirmed the previous rulings, holding that income earned by the Rices from the 1988 exercise of stock options was taxable by Montgomery.

This case has been litigated since 1988 and involved a previous appeal to this court resulting in a remand on procedural grounds. *Rice v. Montgomery* (Jan. 22, 1992), Hamilton App. No. C–900350, unreported, 1992 WL 9525. A brief of *amici curiae* has been filed in the present appeal on behalf of the Procter & Gamble Company, The Kroger Company, General Electric Company, Chemed Corporation, and Eagle–Picher Industries. These companies are five of the largest employers in Ohio. They assert an interest in this case because of the importance of stock options in attracting and holding highly qualified employees, as well as providing these employees with a proprietary interest in the company. While this court recognizes that stock options are clearly important to these companies and their senior employees, the issue in the case is simply whether municipalities may tax these options. Regarding this issue, the Rices assert two assignments of error.

## II. First Assignment of Error

"The board of tax review's decision erred in its determination there was an element of income to be measured after the receipt of property, in the form of employer stock option, as part of a compensation program of the employer, and that the element of income was compensation subject to municipal income taxation."

This assignment of error presents the issue whether the stock options granted to Rice were taxable as compensation and, if so, when their value should be determined. The Rices make four arguments challenging the conclusion of the trial court that the city of Montgomery could tax the stock options as compensation upon the date of their exercise and at a value equal to the spread between the option price and the fair market value.

As part of their first argument, the Rices admit that the grant of a stock option by an employer is compensation; however, they contend that when the option is nontransferable and the option price is equal to the fair market value of the stock on the date of the grant, as is the case here, the option has no value. According to the Rices' logic, there is no taxable event when the stock option is granted since all that the grantee is given is an opportunity to buy stock at the price for

which it is being openly traded. The only benefit to the grantee is, in such case, the possible savings of a brokerage fee.

Furthermore, the Rices contend that the city of Montgomery is limited by its own tax ordinance and regulations in taxing the option at its fair market value at the time of its grant. In support of this argument, both the Rices and *amici* point out that Section 44.03 of the Montgomery Income Tax Ordinance imposes an earnings tax. Montgomery Rules and Regulations, Article III, A.1.c., states: "[W]hen compensation is paid or received in property, its fair market value *at the time of receipt* shall be subject to the tax and to withholding." (Emphasis added.)

We agree with the Rices and the *amici* that the Montgomery Income Tax Ordinance applies to compensation earned as determined by its fair market value at the time of receipt. Moreover, we agree that a nontransferable stock option that has an option price equal to the fair market value of the stock does not provide an immediate realization of income. However, we do not agree that stock options have no value at the time they are granted simply because their immediate exercise would reap no economic benefit. Such logic, or, rather, illogic, ignores the fact that the true value of stock options lies in their future exercise.

As the *amici* point out in their brief, stock options are used to attract and hold highly qualified employees by providing them with a proprietary interest in the company. If stock options were, as the Rices suggest, valueless at the time of their grant, amounting to no more than a chance to buy stock at its present trading price—a right shared in common with everyone with access to the stock market—it is difficult to believe that stock options would be important considerations in executive compensation. We note that the Rices' "valueless" options gained them assets worth over $500,000 in appreciated value.

As the city of Montgomery correctly argues, the true value of the stock option to its owner is the potential for appreciation in stock price without investment risk. If the stock price were to drop, the owner of the option simply would not exercise it, because he could instead buy the stock more cheaply on the market. As stated by Treas.Reg. 1.83–7(b)(3), the value of this type of stock option is risk-free appreciation.

In *Hartman v. Cleveland Hts.* (Aug. 11, 1994), Cuyahoga App. No. 66074, unreported, 1994 WL 422284, the Eighth District Court of Appeals addressed almost identical facts. Citing *Commr. of Internal Revenue v. LoBue* (1956), 351 U.S. 243, 244, 76 S.Ct. 800, 801–802, 100 L.Ed. 1142, a case in which the United States Supreme Court held that the transfer of stock under a stock option plan for less than the stock's value was compensation, not a gift, under federal tax law,

the *Hartman* court held that an employee's receipt of stock options from his employer was a form of earned compensation under the city of Cleveland Heights Income Tax Rules and Regulations. Moreover, the *Hartman* court held that the fair market value of a stock option is the value of anticipated appreciation in stock price from the date of grant to the point in time when the stock option is exercised.

■ As did the trial court, we find both *LoBue* and *Hartman* persuasive here. We hold that, in receiving stock options from Kroger, the Rices received compensation subject to tax by the city of Montgomery. The sole question is when and how to measure the value of that income. Quantifying the value of a stock option at the time of its grant is a complex task, subject to the vagaries of market forecast and compounded by the fact that no ready market can exist for nontransferable stock options. The I.R.S. resolves the difficulty of valuing a nontransferable stock option by waiting until the option is exercised, at which time there is a recognition of income equal to the difference between the option price and the fair market value of the stock at the time of the exercise. At the moment that the income is recognized, a fair market value can be assigned to the stock option.

During oral argument the city of Montgomery proffered that it had chosen to take the same course as the I.R.S., in other words, waiting until the stock option was exercised, to avoid the difficulty and speculation involved in trying to assess the anticipated appreciation in stock price at the time of the option's grant.

We find nothing in the general law of Ohio or in the city of Montgomery tax ordinance and regulations which precludes the city taxing authority from employing the same methodology of valuing a stock option as does the I.R.S. In sum, we find the Rices' first argument unpersuasive.

■ The Rices' second argument, differing substantially from their first, asserts that the exercise of a stock option is not compensation, but rather, that it is imputed income with no realization event until the purchased stock is sold. While we agree with the Rices that the act of exercising options does not alone result in the *realization* of income, we disagree with them that the owner exercising the options would first have to realize money from the sale of the stock in order for Montgomery to tax the stock option. The city of Montgomery is using the exercise event to assign a fair market value to the compensation earned in the form of stock options. Earned compensation need only be *recognized,* not realized, income for tax purposes. The Revised Code does not prevent recognized income from being taxed by municipalities. See, generally, R.C. 718.01. Therefore, this argument is unpersuasive.

The Rices' third argument states that the federal tax provisions are only persuasive authority and that Montgomery may not adopt provisions that violate the Revised Code. Similarly, the fourth argument states that *LoBue, supra,* is not controlling.

We agree on both counts, but do not see how these arguments compel us to find error, as the trial court did not find either the federal tax provisions or *LoBue* controlling. Instead, the trial judge stated in his previous opinion that he found *LoBue* persuasive. So do we, and so did the Eighth District Court of Appeals in *Hartman, supra.*

We conclude that the fair market value of the options was measurable when they were exercised. Therefore, the first assignment of error is hereby overruled.

### III. Second Assignment of Error

"The board of tax review's decision erred in its determination that income derived from an employer stock option was not the type of income from an investment that is protected from municipal income taxation by Section 718 ORC [*sic*]."

This assignment of error simply states that R.C. 718.01(F)(3) applies to these facts and precludes the city of Montgomery from taxing individuals when they exercise stock options. R.C. 718.01(F)(3) states in pertinent part that "no municipal corporation shall tax * * * intangible income." R.C. 718.01(A)(4) defines intangible income as including "income arising from the ownership, sale, exchange, or other disposition of intangible property * * *."

The Rices make four arguments to support their argument that this language insulates the exercise of stock options from municipal taxation. First, they argue that the exercise of a stock option is the disposition of an intangible property right.

Though acknowledging that a stock option is intangible property, the city of Montgomery argues that the Rices' income does not arise from the ownership, sale, exchange or other disposition of the options but, rather, stems directly from Ronald Rice's employment compensation. According to the city of Montgomery, the mere fact compensation is paid in intangible property does not mean that such compensation is exempt from municipal taxation.

In *Hartman, supra,* the Eighth District Court of Appeals rejected the very same argument here advanced by the Rices. The court held:

"[I]n the view of this court, plaintiff's exercise of the stock option did not yield income from stock as plaintiff maintains, but rather yielded him earned compen-

sation which took the form of stock attained at lower than market price. Accordingly, the exercise of the stock option was taxable by the city."

■ We are compelled to agree with the Eighth District Court of Appeals and the position of the city of Montgomery. A realization event is not necessary for an income taxation event. Rather, what is necessary for an income taxation event is recognition of compensation. The tax ordinance and Revised Code only require that the income not derive solely from mere ownership of the option.

As we have previously held under the Rices' first assignment of error, the value of an option is the anticipated appreciation in stock price. The value of the option is simply unascertainable until it is exercised. The city of Montgomery is merely measuring this value at the time of the exercise because the exercise of the option is a recognition event. Upon this recognition event, the options can be accurately valued. To hold otherwise would elevate form over substance. We therefore find no merit in the Rices' first argument.

The Rices argue secondly that the imputed income recognized, but not realized, when a stock option is exercised, is the result of appreciation of the option under market conditions. According to the Rices, the grantee of a stock option assumes market risk which is a characteristic of an investment and not a characteristic of compensation. This being so, the Rices contend, R.C. 718.01(F)(3) precludes taxation of the income derived from the exercise of the stock option.

For reasons which we have previously stated, the owner of a stock option derives value from the lack of risk in the market, because if the stock value declines, the owner does not have to exercise the option. In fact, the only risk to the owner of a stock option is the risk of a potential "lost opportunity cost"—in other words, the option may peak at a higher spread between the option price and the market price before the owner actually exercises the option, thereby giving the owner a smaller than optimal net gain. However, there is never a risk of loss, because the lowest value an option can have is zero.

■ We conclude, therefore, that, contrary to the assertion made by the Rices, the characteristics of a stock option are closer to that of compensation than an investment. Stock options are clearly compensatory in that an employer gives to the employee a risk-free way to increase wealth. Stock options are like investments only in the limited sense that the employee must decide when the spread between the option price and the market price is greatest to optimize the income realized.

Unpersuaded as we are by the Rices' argument that stock options are employee investments, we remain unconvinced that their stock option income was intangible income, and we therefore remain unpersuaded that R.C. 718.01(F)(3)

prohibits Montgomery from taxing this income. Thus we move on to the Rices' third argument.

In their third argument, the Rices assert that the city of Cincinnati, a separate municipal taxing authority, formed the opinion in 1989 that "[t]he difference in the fair market value on the date the option is given and the fair market value on the date of exercise is in the nature of capital appreciation and is not taxable." Based on a one-page opinion sheet from the city of Cincinnati Solicitor's Office, the Rices would have this court reverse the trial judge.

However, the city of Cincinnati itself reversed its position effective January 1, 1995, thus depriving this argument of any cogency it might have had. Moreover, we note that in neither opinion sheet did the city of Cincinnati provide a rationale for its opinion. Without a solid rationale backed by Ohio law, neither of these opinion sheets is persuasive authority. Therefore, we remain unpersuaded that R.C. 718.01(F)(3) applies simply because the city of Cincinnati thought it did in 1989.

■ The Rices' final argument predicates a violation of the equal protection provisions of the Constitution of the United States and the Ohio Constitution because different types of options are taxed differently. The city of Montgomery has not responded to this argument, apparently considering it feckless.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The parallel provision from Section 2, Article I of the Ohio Constitution states that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

■ Unless a classification warrants some form of heightened scrutiny because it jeopardizes the exercise of a fundamental right or categorizes on the basis of a suspect class, the appropriate level of review is the rational basis test. The Rices have not argued that exclusion from taxation on stock option income is a fundamental right, or that Ronald Rice belongs to a suspect class as a former Kroger employer who exercised stock options in the jurisdiction of the city of Montgomery municipal taxing authority. Therefore, the Rices' equal protection argument is reviewable under the rational basis test.

■ The rational basis test requires that we ask first whether there is a difference in the way the city of Montgomery treated the Rices and other taxpayers in Montgomery, and if so, whether the difference rationally advances a legitimate interest of the city. However, the Rices have presented no evidence that they have been treated differently than other taxpayers in Montgomery.

In *Allegheny Pittsburgh Coal Co. v. Webster Cty.* (1989), 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688, the Supreme Court of the United States upheld the power of the state to assign different tax burdens to different kinds of property as long as these different tax burdens were neither arbitrary nor capricious. There is no evidence to support any assertion that Montgomery is taxing stock options in an arbitrary or capricious manner. To the contrary, Montgomery is taxing earned compensation at the moment that it can discover the value of that compensation. For these reasons, we hold that the method of taxation does not violate the Equal Protection Clause of the United States Constitution or of the Ohio Constitution.

We conclude that neither R.C. 718.01(F)(3) nor the equal protection provisions apply to these facts so as to preclude Montgomery from taxing the value of the Rices' stock options. Further, there is nothing in Ohio law that precludes municipalities in Ohio from taxing individuals on the value of their stock options at the time that they exercise their options. Consequently, the second assignment of error is overruled.

### IV. Conclusion

We agree with the trial court and with the Eighth District Court of Appeals, the latter of which decided an identical issue in *Hartman, supra*. The stock options granted to Ronald Rice by Kroger were compensation recognized on the date of exercise and subject to income tax by the city of Montgomery. Accordingly, the judgment below is affirmed.

*Judgment affirmed.*

DOAN, P.J., and SUNDERMANN, J., concur.