HICKEY, Appellant,

v.

CITY OF TOLEDO, Appellee.

[Cite as *Hickey v. Toledo* (2001), 143 Ohio App.3d 781.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–01–1009.

Decided June 15, 2001.

*Charles J. Hickey,* pro se.

*Barbara E. Herring,* Director of Law, and *Jeffrey S. Colturi,* Assistant Director of Law, for appellee.

SHERCK, Judge.

This appeal comes to us from a judgment of the Lucas County Court of Common Pleas. There, a taxpayer appealed from the imposition of city income tax on monetary proceeds derived from the exercise of stock options. Because

we conclude that the recognized gain from the sale of stock was nontaxable intangible income, we reverse.

In 1987, appellant, Charles J. Hickey, was a high-ranking official of Owens–Illinois Company ("O–I") when it was acquired by a subsidiary of the New York investment firm of Kohlberg, Kravis and Roberts. After the acquisition, Kohlberg took the company "private," meaning that O–I's shares would no longer be publicly traded. In the fall of 1987, the new company offered certain key O–I employees, including appellant, the opportunity for equity participation.

Appellant accepted the offer for equity participation, and on December 28, 1987, under a "subscription agreement" purchased 6,679 shares of O–I stock for $5 a share. With the stock purchase appellant also acquired 33,221 options to purchase additional shares of O–I stock at the same price. A separate "Stock Option Agreement" governing this acquisition was executed the day of the purchase agreement. The option agreement provided for the expiration of the options as follows:

"Section 3.2–Expiration of Option

"The Option may not be exercised to any extent by anyone after the first to occur of the following events:

"(a) The expiration of ten (10) years and one (1) day from the date the Option was granted; or

"(b) Until December 28, 1992, 120 days after the time of the Employee's Termination of Employment unless such Termination of Employment results from (i) his death, (ii) his permanent disability or (iii) his retirement at age 65 or over after having been employed by the Company or a Subsidiary for at least three (3) years after the date the Option was granted; or

"(c) After December 28, 1992, the time of the Employee's Termination of Employment unless such Termination results from death, disability or retirement as provided in paragraph (b) above; or

"(d) The expiration of one (1) year from the time of the Employee's Termination of Employment by reason of (i) his death, (ii) his permanent disability or (iii) his retirement at age 65 or over after having been employed by the Company or a Subsidiary for at least three (3) years after the date the Option was granted; * * * "

On December 28, 1987, appellant was approximately six months from his sixty-fifth birthday. He did not, however, retire from O–I until December 31, 1989.

Shortly after his retirement, appellant entered into an "engagement agreement" with O–I to act as an attorney on retainer to the company for a two-year period commencing January 1, 1990. Concurrent with this agreement, O–I and

appellant agreed to an "amendment" of the 1987 stock option agreement, which substituted the words "engagement agreement" for "employment" in the provisions of section 3.2.

According to appellant, he completed his legal work for O–I on June 28, 1991. On that date, appellant entered into a second amended stock option agreement with O–I. This agreement deleted references in the option agreement to "employment" and "engagement." In place of that language, this amended agreement added a provision making the options expire at "[a]nytime at which [appellant] shall commit an Act Injurious to the Company." Another amendment defined "Act Injurious to the Company" as "unapproved competition" with O–I.

On January 14, 1997, appellant exercised his option on the 33,321 shares of O–I stock. Appellant purchased the shares for $166,605. On the date of purchase, the shares had a market value of $745,724. During this transaction, O–I withheld $13,030.17 for city of Toledo income tax. On April 14, 1998, appellant filed his Toledo income tax return, requesting a refund of the $13,000 as having been erroneously withheld. When Toledo's Tax Commissioner denied the request for a refund, appellant appealed the decision to the city's Income Tax Board of Review.

Although the board of review held a hearing on appellant's petition for a refund, the matter was principally presented through agreed stipulations of fact and agreed exhibits. The board of review, relying on *Rice v. Montgomery* (1995), 104 Ohio App.3d 776, 663 N.E.2d 389, found that the stock options had originally been given to appellant as compensation and were, therefore, taxable as income at the time of their exercise. Consequently, the board affirmed the Tax Commissioner's denial of appellant's application for refund.

Appellant appealed the board of review's decision to the Lucas County Court of Common Pleas, pursuant to R.C. Chapter 2506. The common pleas court granted appellant's request for a hearing to present additional evidence. Eventually, the court, in a fifty-four page decision, affirmed the prior administrative decision. From that judgment, appellant now brings this appeal, setting forth the following eight assignments of error:

"Procedural errors of Trial Court:

"Error No. 1: The plain language of Tol.Mun.Code sec. 1905.13 required the Board of Review to have Rules Of Procedure for the Appellant's hearing which the Board did not provide; the resulting decision was illegal under RC sec. 2506.04 and should not have been affirmed by the Trial Court.

"Error No. 2: A majority of members of the Board presented an *appearance* of unfairness and impartiality. Without an *appearance* of fairness and impartiality Federal due process requirements were violated; the resulting decision was

unconstitutional under RC sec. 2506.04 and should not have been affirmed by the Trial Court. The Board hearing was not open to the public.

"Error No. 3: As the Board Hearing and Board decision are illegal or unconstitutional, pursuant to the plain language of RC sec. 2506.04 and applicable cases the Trial Court should not have given a presumption of correctness or any deference or weight to the Board's decision and should not have affirmed the Board's decision.

"Substantive errors of Trial Court:

"Error No. 4: Contrary to the requirements of Section 5, Article XII of the Ohio Constitution, the legislative intent of Tol.Mun Code sec 1905.03(A) and prior cases there is no specific and distinct language in Tol.Mun Code sec 1905.03(A) that would permit a tax on the value of stock options in the year when they are exercised rather than to tax stock options under the general rule that the value of taxable property is taxed in the year when it is received. RC sec 718,01(G) [*sic*] was violated by the City.

"Error No. 5: The Trial Court erred when it disregarded the binding legal effect of the Stipulation Of Facts, disregarded material paragraphs of such Stipulation defining the terms of the 1987, 1989 and 1991 stock option contracts and substituted its own construction of such contracts in holding that the 1987 Options continued in existence to 1997.

"Error No. 6: The Stipulation Of Facts corroborated by testimony, shows the 1987 Option contract expired on October 10, 1988. The 1987 Options could not have been and were not exercised in 1997.

"Error No. 7: Under Tol.Mun.Code sec. 1905.03(A) the 1991 Options were taxable, if at all, in 1991, the year when they were received as they were immediately exercisable, irrevocable and therefore vested in 1991. The 1991 Options had a fair market value of $10.37 per share when received determined by a generally accepted accounting method. The Trial Court in error failed to find the Statute of Limitations now bars additional assessments for 1991.

"Error No. 8: Conclusions: When viewed as a whole Errors No. 1 to No. 7 show the Trial Court abused its discretion. The abuse of discretion in Error No. 5 when viewed alone supports reversal. The preponderance of the evidence shows there is no tax liability for 1997."

I

■ In his first two assignments of error, appellant complains that the common pleas court should have reversed the board of review's tax determination because the board had not adopted procedures required by ordinance and

because the composition of the board, which included the city Law Director and the city Director of Finance, created an appearance of impropriety.

For there to be reversible error of a decision made at any stage of any proceeding, it must operate to the prejudice of the party complaining of the error. Civ.R. 61; *Cappara v. Schibley* (1999), 85 Ohio St.3d 403, 408, 709 N.E.2d 117, 121, citing *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.

In this matter, appellant has failed even to allege prejudice from the improprieties which he suggests occurred. Furthermore, our own examination of the record fails to reveal any matter which appellant put forth for the board's consideration which was not considered or the inclusion of any matter to which appellant objected. Moreover, any impropriety at the administrative level was cured by the common pleas court when it agreed to accept additional testimony during the R.C. Chapter 2506 appeal. Accordingly, appellant's first and second assignments of error are not well taken.

## II

In his third assignment of error, appellant argues that the common pleas court should not have afforded the board of review's decision any deference, because the decision was "illegal." Appellant insists that the decision was "illegal" because of the improprieties he enumerates in his first two assignments of error. As this assignment is dependent on the success of one or more of the prior two assignments of error, it, too, is not well taken.

## III

Turning to appellant's "substantive" assignments of error, the function of a common pleas court in an R.C. Chapter 2506 administrative appeal is to "examine the 'substantive, reliable and probative evidence on the whole record[,]'" to determine whether there is a preponderance of such evidence to support the administrative decision. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 851–852. The role of the court of appeals is to determine whether the common pleas court correctly applied its statutory standard of review. A court of appeals must affirm the common pleas court unless the appellate court finds, as a matter of law, that the common pleas court decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id.;* R.C. 2506.04.

The city of Toledo imposes a two and one-half percent income tax:

■■ "On all salaries, wages, commissions, and other compensation (including tips and gratuities) earned or received by resident individuals of the City of Toledo." Toledo Municipal Code Sec. 1905.03(A)(1).[1]

However, ordinarily exempt from municipal taxation is income from the sale or exchange of "intangible property." R.C. 718.01(A)(4) and (F)(3).[2] A stock option is intangible property. *Rice v. Montgomery, supra,* at 782, 663 N.E.2d at 393. Nevertheless, when stock options are received by an employee as compensation, they may be properly taxed as compensation. *Id.* at 779, 663 N.E.2d at 391.

Appellant has alternate theories for tax avoidance. He first argues that the options were not provided to him as compensation but rather were purchased by him concurrent to his 1987 stock purchase.

Next, he contends that even if the 1987 options were part of his compensation from O–I, these options expired and were later replaced by the 1989 options when he became an independent contractor. Again, when that relationship ended and those options expired, he obtained the final 1991 options in return for his agreement not to compete. This last set, appellant insists, was created after he had severed his relationship with O–I. That set of options could not, therefore, be considered compensation.

Third, if the 1991 stock options were considered compensation, they should have been taxed in 1991 by computing the difference between the stock option price and the 1991 market value of the stock. Moreover, if the compensation should have been reported in 1991, by 1997, the tax year at issue here, the statute of limitations on imposing liability on this income would have expired.

The board of review rejected these arguments, concluding that *Rice v. Montgomery, supra,* controlled. *Rice* concerned a taxpayer who received stock options as compensation from his employer. The city of Montgomery, following the practice of the Internal Revenue Service, taxed the income from the options at the time they were exercised "to avoid the difficulty and speculation involved in trying to assess the anticipated appreciation in stock price at the time of the option's grant." *Id.* at 781, 663 N.E.2d at 392.

---

1. In 1982, the tax commissioner promulgated a regulation specifically including in a taxpayer's taxable income that portion of stock option income to the same extent that it was included in the taxpayer's federal tax return. Toledo Tax Regulations 9(R). However, the regulation was never properly adopted and was not used by either the board of review or the court of common pleas in determining this matter.

2. R.C. 718.01(G) provides that municipalities, which had taxed intangible income, may continue to do so after 1988 on a vote of its citizens. It is undisputed that Toledo voters never approved such a measure.

In the present case, the common pleas court affirmed the board of review, conducting its own detailed analysis of the option agreements. The court found that the option contracts were, in fact, a single contract executed in 1987 in compensation for appellant's employment and amended in 1989 and 1991. The court then applied *Rice v. Montgomery* to find that the income recognized by the 1997 exercise of stock options represented taxable compensation for that year.

In his fifth and sixth assignments of error, appellant complains that the common pleas court improperly ignored the stipulation of facts upon which the matter was submitted to the board of review. Material among these stipulations was that the 1987 option agreement was a contract to purchase stock and that the 1987 options expired without being exercised, as did the new 1989 options. According to the stipulations, the 1991 options were issued after appellant no longer had any employment ties with O–I. Moreover, it was stipulated that the fair market value of O–I stock at the time these 1991 options were issued was $10.37.

It has long been held in Ohio that formal stipulations of fact submitted to a tribunal are in the nature of a special verdict by a jury, being the equivalent of proof made by both parties. *Ish v. Crane* (1862), 13 Ohio St. 574, 579–580, 1862 WL 56; *Garrett v. Hanshue* (1895), 53 Ohio St. 482, 495, 42 N.E. 256, 259–260; *Ramsey v. Ernoko, Inc.* (1991), 74 Ohio App.3d 749, 754, 600 N.E.2d 701, 704. "Thus, the stipulation perform[s] the same function as [a] factual determination rendered by a jury upon conflicting evidence." *State v. F.O.E. Aerie 2295* (1988), 38 Ohio St.3d 53, 54, 526 N.E.2d 66, 67.

In this matter, the common pleas court's efforts to determine appellant's intent when contracting for stock options overrode the stipulations that had been entered. The stipulations entered herein establish that the 1987 and 1989 stock options expired and that the options exercised in 1997 were purchased in 1991, after appellant severed all employment relations with O–I. No compelling reason appears of record for the court to disregard such stipulations. Accordingly, appellant's fifth and sixth assignment of error are well taken.

In essence, we are left with the fact that in 1991, appellant acquired options to purchase 33,221 shares of O–I stock for $5 per share. This occurred after appellant left O–I's employ and after he had completed performing any services for hire for O–I. Appellant argues that he, in effect, "purchased" these options with his promise not to compete. In support of this argument, he points to the language of the 1991 option agreement, which forecloses exercise of the options on appellant's failure to abide by the agreement.

Our conclusion in this matter is inescapable. If we accept, as we must, the stipulations, we must then conclude that when appellant acquired the options at

issue, O–I had no legal duty to pay him anything more than he had received. Given this, the only explanations are that appellant received these options from the goodness of O–I's corporate heart (nontaxable gift) or that he purchased the stock options using his promise not to compete with his former employer as consideration (nontaxable as a gain on the sale of intangible property).[3] In either event, the gain derived from the sale of these options is not subject to Toledo income tax.

Because of our conclusion that the recognized gain from the purchase of stock options is intangible income and, therefore, not taxable, we need not reach appellant's remaining assignments of error. Assignments of Error Nos. 4, 7, and 8 are found moot.

On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. Costs to appellee.

*Judgment reversed.*

PIETRYKOWSKI, P.J., and HANDWORK, J., concur.

---

**3.** Proceeds from a straightforward covenant not to compete would ordinarily generate nontaxable intangible income. See *Brown v. Dir. of Revenue* (Mo.2000), 12 S.W.3d 319, 320; *Cincinnati Bengals Inc. v. Papania* (1993), 92 Ohio App.3d 785, 787, 637 N.E.2d 330, 331; R.C. 5701.06(C).