[Cite as *Salibra v. Mayfield Hts. Mun. Bd. of Appeal*, 2016-Ohio-276.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lawrence A. Salibra, II, | : | |
| Appellant-Appellant, | : | No. 14AP-890 |
| | | (B.T.A. No. 2012-933) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Mayfield Heights Municipal Board of Appeal et al., | : | |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on January 26, 2016

*Lawrence A. Salibra, II*, pro se.

*Amy L. Arrighi*, for appellee City of Mayfield Heights, c/o Regional Income Tax Agency, Tax Administrator; *Paul T. Murphy* for appellee City of Mayfield Heights Municipal Board of Appeal.

APPEAL from the Ohio Board of Tax Appeals

BROWN, J.

{¶ 1} This is an appeal by appellant, Lawrence A. Salibra, II, from a decision and order of the Ohio Board of Tax Appeals ("BTA"), affirming a decision of appellee, the City of Mayfield Heights Board of Review ("BOR"), denying appellant's appeal of a decision by the Regional Income Tax Authority ("RITA") which granted in part and denied in part appellant's request for a refund of tax withheld by his employer and paid to appellee, the City of Mayfield Heights ("Mayfield Heights" or "the city") in 2007.

{¶ 2} The following background facts, taken primarily from the decision and order of the BTA, dated September 26, 2014 are generally undisputed. At issue in this

case is a tax arising out of the cancellation of stock options which appellant's former employer, Novelis, Inc. ("Novelis"), granted to appellant. In 1995, appellant began working for Alcan Aluminum Corporation ("Alcancorp"), the predecessor to Novelis, at Alcancorp's office in Mayfield Heights. During the course of his employment with Alcancorp, appellant was granted company stock options. In 2005, Novelis was formed as a spinoff from a portion of the Alcancorp operation; as a result of the spinoff, appellant's unexercised stock options were converted to Novelis stock options.

{¶ 3} During the time appellant worked in Mayfield Heights for Alcancorp and Novelis, he requested and received from the city refunds of a portion of the tax his employer withheld and remitted to the city each year; these refunds represented days that appellant, a non-resident of Mayfield Heights, demonstrated he performed work outside of the city. Appellant received these refunds by filing a request with RITA, documenting the days he worked outside the city and including a certification by his employer that it had withheld the city tax from appellant in excess of his liability to the city.

{¶ 4} Appellant retired from Novelis, effective January 1, 2006. In 2007, an India-based company acquired Novelis; as a result of the acquisition, all existing Novelis stock options were cancelled and the resulting income paid to the holders, including stock options still held by appellant. Appellant received a form W-2 from Novelis for tax year 2007 which reported the income he received as a result of the cancellation of the stock options. Novelis withheld and remitted tax to the city at the rate of 1 percent of the income reported to appellant.

{¶ 5} Appellant sought a refund from RITA of all income tax withheld and paid to the city by his former employer on the basis that he neither worked nor lived in the city during 2007 when he received the stock option income. RITA granted in part and denied in part appellant's refund request. The partial refund was calculated by apportioning the dollars received by appellant in 2007 by the average percentage of time he worked outside the city over the course of his employment with Alcancorp and Novelis, as demonstrated by prior refund requests certified by the employer. Upon notification of the partial denial, appellant appealed to the BOR, which affirmed RITA's denial of the remainder of the refund. Appellant appealed that determination to the BTA, which issued its decision and order September 26, 2014 affirming the decision of the BOR.

{¶ 6}   On appeal, appellant sets forth the following four assignments of error for this court's review:

> 1. The Ohio Board of Tax Appeals (hereinafter "BTA") erred in characterizing the legal issue in this case as a challenge to the Appellees authority to tax stock options granted while the Appellant was employed in the municipality but were exercised after he retired and no longer worked or resided in the municipality.
>
> 2. The BTA erred by not detailing in its opinion the undisputed facts concerning the manner in which stock options are granted and exercised in the context of s [sic] globally mobile workforce of a foreign multinational corporation.
>
> 3. The BTA erred by not addressing the issue of whether the Appellees refusal to apply its standard rule to determine taxable income by creating a fraction whose numerator are the days worked in the municipality and whose denominator is total work days to allocate taxable income and instead creating a new rule unique to Appellant was legally appropriate[.]
>
> 4. The BTA erred by not complying with the Ohio Rules of Civil Procedure by failing to grant the appropriate sanctions against the Appellee for failure to answer interrogatories.

{¶ 7}   At the outset, we note that appellant has failed to separately argue each assignment of error as required by App.R. 16(A)(7).  Accordingly, we will address the assignments of error jointly.

{¶ 8}   The standard of review for an appellate court on an appeal from the BTA is set forth in R.C. 5717.04, which states in part:

> If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

{¶ 9}   Pursuant to the above cited provision, a decision of the BTA "is to be affirmed unless the decision is unreasonable or unlawful."  *Ohio Natl. Bank v. Franklin Cty. Bd. of Revision,* 10th Dist. No. 00AP-1161 (Mar. 30, 2001).

{¶ 10} Although not styled as an assignment of error, appellant argues in his "issues presented for review" that "Appellees' taxation of a small segment of the class of persons which it has defined as subject to the tax simply because they can be conveniently taxed when the Appellee has neither the administrative capability, infrastructure or * * * capability of taxing the vast majority of the taxable class violates the 'as applied' provisions of the Due Process Clauses of the Constitution of The United States and the State of Ohio."  We note that, in the body of his appellate brief, appellant refers to his "as-applied" challenge as an equal protection argument.

{¶ 11} As noted under the facts, appellant was granted company stock options as part of his employment with Alcancorp and Novelis.  Over the course of his employment, appellant, a non-resident of Mayfield Heights, requested and received from the city refunds of a portion of the tax his employer withheld and remitted to the city each year based upon days appellant demonstrated that he performed work outside the city.  In 2007, following appellant's retirement (effective January 1, 2006), Novelis was sold, and existing Novelis employee stock options were cancelled; the resulting income was paid to the holders, including stock options held by appellant.  Novelis withheld and remitted to the city tax at the rate of 1 percent of the income reported to appellant.  Appellant applied for a refund from RITA, which RITA granted in part and denied in part based on appellant's past allowed refunds for income he received with respect to days he worked for his employer outside the city.

{¶ 12} Appellant challenged RITA's determination, and a hearing was conducted before the BOR on December 1, 2008.  The BOR affirmed RITA's denial of the remainder of the refund on the basis that the stock options granted to appellant were compensation taxable when granted (i.e., while appellant was working in the city), and therefore subject to taxation pursuant to Section 739.03 of the Codified Ordinances of Mayfield Heights (hereafter "the city ordinance").  The BTA affirmed that decision, finding no error with the BOR's determination that the tax was properly imposed "per the City's ordinances and related RITA rules and regulations."  In its decision, the BTA agreed with the position of

Mayfield Heights that, under Ohio law, "stock options have been repeatedly found to be earned for municipal income tax purposes when they are granted, but taxable when exercised."

{¶ 13} While appellant's primary argument on appeal focuses on an "as-applied" constitutional challenge, we begin with a consideration of the BTA's finding that the BOR did not err in its determination that the tax was properly imposed with respect to stock options granted to appellant pursuant to the city's taxing ordinances and related RITA rules and regulations.  On this point, appellant contends that the city, if it was "seriously concerned about the most revenue at the lowest cost, * * * would argue its right to tax arises when the income is received regardless of when the options are granted."

{¶ 14} Several Ohio courts have addressed the issue of municipal tax liability associated with income from employee stock options.  In *Hartman v. Cleveland Heights,* 8th Dist. No. 66074 (Aug. 11, 1994), the court held that an employee's receipt of stock options was a form of compensation that was taxable under the city's Income Tax Rules and Regulations.  In so holding, the court relied in part on *C.I.R. v. Lo Bue,* 351 U.S. 243 (1956), in which the United States Supreme Court recognized that stock options are treated as compensation, includible as taxable income.

{¶ 15} In *Rice v. Montgomery,* 104 Ohio App.3d 776 (1st Dist.1995), the plaintiffs-taxpayers appealed from a trial court's decision affirming a determination by the Montgomery Board of Tax Appeals that the plaintiffs' exercise of an employee stock option was subject to municipal income taxation.  The court in *Rice* affirmed the judgment of the trial court, finding that the grant of a stock option constituted compensation subject to municipal income taxation.  In its decision, the court addressed and rejected the plaintiffs' contention that an owner exercising stock options would first have to realize money from the sale of the stock in order for the municipality to tax the stock option.  Rather, the court determined, the city "is using the exercise event to assign a fair market value to the compensation earned in the form of stock options."  *Id.* at 781.  Thus, the court held, "[e]arned compensation only need be *recognized*, not realized, income for tax purposes," and the Ohio Revised Code "does not prevent recognized income from being taxed by municipalities."  (Emphasis sic.)  *Id.*

{¶ 16} In *Wardrop v. Middletown Income Tax Review Bd.*, 12th Dist. No. CA2007-09-235, 2008-Ohio-5298, the appellants, two retirees of AK Steel, challenged whether the city of Middletown could tax them on income received from stock options where the appellants neither worked nor lived in the city in the year of receipt. Under the facts of that case, the appellants, who both retired in 2003, exercised stock options in 2004 which their employer had granted them during the course of their employment. For the 2004 tax year, the employer withheld and remitted to the city of Middletown 1.5 percent of the compensation as city personal income tax. The appellants filed income tax returns with the city of Middletown for the tax year 2004, seeking a refund of a percentage of the income tax they paid based on the average number of days each was physically present in the city over the past five years. The city of Middletown denied the refund requests. The city of Middletown Income Tax Review Board also rejected appellants' claims for refunds, and the trial court affirmed that decision.

{¶ 17} On appeal, the appellants raised several challenges, including a claim that the options should not be subject to the Middletown tax because they did not realize the income at issue until after their retirement. The court rejected this argument, agreeing with the trial court's determination that the critical issue "was when appellants earned the income, not when they received it." *Id.* at ¶ 16.

{¶ 18} The appellants in *Wardrop* also asserted that the income they earned while working on behalf of AK Steel outside the territorial jurisdiction of Middletown was not subject to municipal income tax. More specifically, the appellants argued that the city was required to apportion their income based on the number of days they worked within the city. The city ordinance at issue in that case imposed "a municipal tax '[o]n all qualifying wages, commissions, and other compensation and other taxable income earned or received during the effective period * * * by nonresidents for work done or services performed or rendered in the City.' " *Id.* at ¶ 19.

{¶ 19} The reviewing court in *Wardrop* construed the ordinance as "unambiguously" restricting the city to "taxing nonresidents for work activities occurring within its territorial boundaries." *Id.* at ¶ 20. The court found that, to the extent the appellants performed work within the city, such work was subject to taxation under the ordinance; conversely, to the extent they performed work outside of the city, it was not

subject to taxation. The court therefore concluded that the appellants "were entitled to apportion the income, for municipal tax purposes, based on the number of days they worked within the city." *Id.* at ¶ 29. The court further found that "absent any guidance from Middletown prescribing an alternative method of allocation, appellants adopted a reasonable allocation based on the average number of days worked within the city over the preceding five years." *Id.*

{¶ 20} Finally, the court in *Wardrop* addressed the appellants' argument that the trial court erred in finding that the appreciated value of their stock options was subject to the city's income tax. The appellants asserted that the profit was not subject to taxation under the city ordinance because they did not work or reside in Middletown when the appreciation occurred or when they exercised the options. The court, relying in part on the decision in *Rice,* rejected this argument, holding in part:

> [Appellants] earned compensation in the form of stock options while working for AK Steel. Middletown could tax this compensation to the extent it constituted "income earned * * * by nonresidents for work done or services performed or rendered in the City." * * * Middletown necessarily had to wait until the option-exercise date to assign a value to the compensation, however, because the value of the options could not be determined until then. Although [appellants] did not reside or work in Middletown when they exercised the options, the fact remains that they *earned* the stock-option compensation while working for AK Steel. Therefore, [the city ordinance] authorized Middletown to tax the resulting gain, which could be calculated only when appellants exercised the options.

(Emphasis sic.) *Wardrop* at ¶ 47.

{¶ 21} In the present case, Section 793.03 of the city ordinance states in part: "An annual tax * * * shall be imposed * * * at the rate of one percent per year upon * * * all salaries, wages, commissions and other compensation earned after December 31, 1971, by nonresidents of the City for work done or services performed or rendered in the City."

{¶ 22} The BTA, in addressing appellant's claim that the city ordinance was improperly applied to the facts, found no error with the BOR's determination that the tax was properly imposed in accordance with the city's tax laws and related RITA rules and regulations. As previously noted, the BTA agreed with the city's argument that, in

accordance with Ohio law, "stock options have been repeatedly found to be earned for municipal income tax purposes when they are granted, but taxable when exercised." In so holding, the BTA relied in part on *Hartman* and *Rice.*

{¶ 23} Upon review, we find that the BTA's determination on this issue was neither unreasonable nor unlawful. Under Ohio law, the employer's grant of stock options to appellant while he worked in Mayfield Heights was a form of compensation for work done or services performed, but the value of those options could not be determined until the exercise of those options. The fact that appellant was retired, and did not reside or work in Mayfield Heights at the time the options were exercised (or cancelled), did not preclude the city from imposing the tax at issue (subject to the income tax rate in effect at the time the income was earned). *Wardrop* at ¶ 47 (although retirees did not reside or work in taxing city when they exercised the options, "the fact remains that they *earned* the stock-option compensation while working for" their employer and, therefore, the city ordinance authorized the city to tax the resulting gain "which could be calculated only when [the retirees] exercised the options"). (Emphasis sic.)

{¶ 24} Further, we agree with appellees that the manner in which the city, through RITA, provided a partial refund to appellant was appropriate. As noted by appellees, the city apportioned the stock option income to account for time appellant worked outside the city, resulting in a partial refund of the tax paid to the city on the stock options. On this issue, we find persuasive the reasoning of the court in *Wardrop,* which deemed such a method of allocation as reasonable. *See id.* at ¶ 29.

{¶ 25} We next address appellant's "as-applied" constitutional argument. In his appellate brief, appellant contends that neither the city nor the BTA "appear to acknowledge (or perhaps understand) the nature of [an] as-applied challenge," suggesting that they treated his constitutional claim as a facial challenge to the city's ordinance.

{¶ 26} In general, statutes, ordinances and administrative rules "may be constitutionally challenged on their face or as applied." *Wymsylo v. Bartec, Inc.,* 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 20. Thus, "[a] statute which is constitutional on its face may be found unconstitutional if it is applied in a discriminatory manner." *Cleveland v. Pfledger,* 8th Dist. No. 58314 (Mar. 21, 1991). Further, " '[i]f a statute is unconstitutional as applied, the State may continue to enforce the statute in different

circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances.' " *Fagan v. Boggs,* 4th Dist. No. 10CA17, 2011-Ohio-5884, ¶ 22, quoting *Ruble v. Ream,* 4th Dist. No. 03CA14, 2003-Ohio-5969, ¶ 17.

{¶ 27} A facial challenge involves an allegation that "a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate government purpose." *Wymsylo* at ¶ 21. By contrast, a party raising an as-applied constitutional challenge "alleges that 'the "application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." ' " *Id.* at ¶ 22, quoting *Yajnik v. Akron Dept. of Health, Housing Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, ¶ 14, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists,* 506 U.S. 1011 (1992) (Scalia, J., dissenting). Further, "[a] statute may be unconstitutional as applied if the government selectively enforces it in violation of equal protection rights." *Fagan* at ¶ 23. Thus, " '[t]hough the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.' " *Id.,* quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 373-74 (1886).

{¶ 28} Under Ohio law, "[b]ecause an as-applied challenge depends upon a particular set of facts, this type of constitutional challenge to a rule must be raised before the administrative agency to develop the necessary factual record." *Wymsylo* at ¶ 22. *See also Temponeras v. Ohio State Med. Bd.,* 10th Dist. No. 14AP-970, 2015-Ohio-3043, ¶ 15 (noting that "a facial constitutional challenge may be raised for the first time in an appeal from an administrative agency, but an as-applied constitutional challenge must be raised first in the agency to allow the parties to develop an evidentiary record").

{¶ 29} In order to prevail on a constitutional challenge to a statute "as applied, the challenger has the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional when applied to those facts."

*Simpkins v. Grace Brethren Church of Delaware,* 5th Dist. No. 13 CAE 10 0073, 2014-Ohio-3465, ¶ 66.

{¶ 30} Appellant argues on appeal that "in the context of a globally mobile workforce," the taxing statute at issue, "which defines the tax class as one whose liability arises when the options are granted * * * was not and practically could not be administered in [a] manner that was not discriminatory." Appellant contends that such "discrimination arises not from commission but from omission." According to appellant, while "the statute is facially constitutional," appellee "is not enforcing the statute" in instances in which "the costs of collecting it would be prohibitive." Appellant also raises what appears to be a selective enforcement equal protection argument, asserting that this case involves one "of affirmative discrimination in the statute's administration" based on the formula it used to calculate his tax liability, i.e., that the taxing authority utilized a standard that applied solely to him.

{¶ 31} In order to prevail on a claimed denial of equal protection by selective enforcement of a law, a taxpayer is required to show: "(1) [the taxpayer], compared with others similarly situated, was selectively targeted; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato,* 60 F.3d 906, 909-10 (1st Cir.1995).

{¶ 32} Based upon this court's review of the record of proceedings before both the BOR and BTA, appellant's equal protection challenge, whether viewed as a standard "as-applied" claim or as a selective enforcement claim, fails. We note that, during the hearing before the BOR, appellant offered his own views regarding the application and enforcement of the city ordinance with respect to a hypothetical set of circumstances involving stock option holders residing outside the state or country. There is, however, no factual evidence in the record reflecting that the city administered or applied the ordinance in an unequal or unreasonable manner, or that the city treated similarly situated individuals differently. *See, e.g., Hegwood v. Eau Claire,* 676 F.3d 600, 603 (7th Cir.2012) ("When we are confronted with an as-applied challenge, we examine the facts of the case before us exclusively, and not any set of hypothetical facts under which the statute might be unconstitutional."). Nor did appellant submit evidence that the city

administered the tax in a manner that singled him out in contrast to others similarly situated, or that it enforced the ordinance against him based upon discriminatory or impermissible considerations. Accordingly, appellant has failed to show by clear and convincing evidence that the income tax ordinance, as applied by the city under the facts of this case, violated his equal protection rights.

{¶ 33} Appellant also contends that the BTA erred in ruling on his motion to compel answers to interrogatories. In his "issues presented for review," appellant contends he was deprived of his "right to sanctions for failure to obtain a timely response to interrogatories."

{¶ 34} By way of background, the record indicates that appellant submitted interrogatories to the BOR during the administrative proceedings before the BTA. On September 19, 2012, the BOR submitted answers to the interrogatories. On October 19, 2012, appellant filed a motion to compel answers to interrogatories propounded to the BOR. In the motion, appellant argued in part that the decision of the BOR had failed to address the constitutional issues he raised, and that the BOR's answers to his interrogatories "reflect an unwillingness * * * to effectively address this constitutional challenge." By order filed October 30, 2012, the BTA denied the motion to compel on the basis that appellant had not acted in a timely manner.

{¶ 35} On November 8, 2012, appellant filed a motion for reconsideration of the BTA's order denying his motion to compel answers to interrogatories. On November 9, 2012, the BTA rendered a decision granting appellant's motion for reconsideration based on the BTA's acknowledgment that "some confusion could have resulted from the board's failure to respond to the parties' multiple joint motions for extension of time response/object to interrogatories." In considering the merits of appellant's motion to compel, the BTA denied the motion on the basis that the BOR "provided adequate responses/appropriate objections to the subject discovery requests."

{¶ 36} In general, the determination of discovery disputes and decisions with respect to discovery rules "are confided to the sound discretion of the BTA, and absent a showing that the BTA abused its discretion, such decisions by the BTA will not be disturbed on appeal." *HK New Plan Exchange Property Owner II, LLC v. Hamilton Cty. Bd. of Revision,* 122 Ohio St.3d 438, 2009-Ohio-3546, ¶ 16.

{¶ 37} We note that, pursuant to Section 793.29(b) of the city ordinance, "[t]he Administrator shall enforce payment of all taxes owing to the City," while Section 793.32 of the city ordinance authorizes the board of trustees of RITA, pursuant to an agreement entered into by the city, "to administer and enforce" Chapter 793 as the agent of the city. Section 793.36 of the city ordinance authorizes the BOR to hear appeals from "any ruling or decision of the Administrator" and, in its adjudicative capacity, the BOR has "jurisdiction to affirm, reverse or modify any such ruling or decision or any part thereof."

{¶ 38} In the instant case, many of the interrogatories propounded to the BOR called for legal conclusions or sought explanations as to the administration and/or enforcement of the income tax, including inquiries as to the "legal basis" upon which the BOR "relies to assess the income tax," whether it was the position of the BOR "that the United States may tax * * * income of a US citizen that is subject to treaty exclusion," and whether it was the position of the BOR that "the United States may tax the income of a non US citizen." In response to these latter inquiries, the BOR stated that it "cannot speculate or opine on the taxability of the income by the United States." Appellant also inquired whether the BOR had "ever collected income tax on stock options exercised by US nationals who were former employees" of Alcancorp or Novelis. The BOR responded that it "is a reviewing board and does not collect tax." Upon review of the interrogatories and responses at issue, we find that the BTA did not abuse its discretion in its determination that the BOR provided adequate responses and objections to the discovery requests. Thus, the BTA did not err in denying the motion to compel.

{¶ 39} Based upon this court's review of the record, we find the BTA's decision and order was reasonable and lawful. Accordingly, appellant's first, second, third, and fourth assignments of error are not well-taken and are overruled, and the order of the Ohio Board of Tax Appeal, affirming the decision of the City of Mayfield Heights Board of Review, is hereby affirmed.

*Order affirmed.*

KLATT and HORTON, JJ., concur.

_____