DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal and cross-appeal from a judgment of the Ottawa County Court of Common Pleas which granted the parties, plaintiff-appellant/cross-appellee Mary Ann Westhoven and defendant-appellee/cross-appellant Thomas Westhoven, a divorce from each other, divided the parties' assets, and awarded Mary Ann spousal support of $450 per month for a period of five years beginning September 18, 2003. Mary Ann challenges the trial court's judgment through the following assignments of error: *Page 2 
 {¶ 2} "I. The trial court erred to the prejudice of the appellant in awarding an additional $5,000.00 in equity of the marital residence to appellee.
 {¶ 3} "II. The trial court's spousal support award was not based upon Ohio statutory law.
 {¶ 4} "III. The trial court erred to appellant's prejudice in its calculation of appellee's spousal support arrearage.
 {¶ 5} "IV. The trial court erred when it specified a sum for missing items of personal property as a credit to appellee from appellant."
 {¶ 6} Thomas further challenges the trial court's judgment through six cross-assignments of error:
 {¶ 7} "1. The trial court erred in determining that the entire proceeds from the sale of the Oakdale property were marital assets.
 {¶ 8} "2. The court erred in failing to set off to each party the non-marital portion of the social security benefits, the UNUM disability benefits and the Metlife disability benefits.
 {¶ 9} "3. The court erred in failing to equitably divide the marital personal property.
 {¶ 10} "4. The court erred in failing to equitably divide the reduction in the mortgage paid by defendant after December 31, 2003.
 {¶ 11} "5. The court erred in failing to find that plaintiffs acts of removing funds from defendant's accounts constituted financial misconduct and to compensate defendant therefor [sic]. *Page 3 
 {¶ 12} "6. The court abused its discretion by failing to grant defendant a timely hearing on his objections to the temporary spousal support order issued September 18, 2003, and to give defendant credit for payments made for plaintiffs various insurance policies."
 {¶ 13} Mary Ann and Thomas were married on December 20, 1985. No children were born of the marriage. On May 25, 2003, Thomas moved out of the marital home on Fostoria Road in Curtice, Ohio. Mary Ann remained in the home and, on August 5, 2003, filed a complaint for divorce. She also filed a motion for an order granting her temporary spousal support and the payment of her medical bills and the expenses of the marital home during the pendency of the divorce proceedings. In his answer, Thomas also requested a divorce and the equitable division of the marital assets.
 {¶ 14} On September 18, 2003, the lower court issued a temporary order which, in relevant part, gave Mary Ann the exclusive use and possession of the marital residence, ordered Thomas to pay Mary Ann $950 per month as and for temporary spousal support beginning on September 19, 2003, ordered Thomas to pay the mortgage during the pendency of the divorce proceedings, and ordered Mary Ann to pay the utilities at the marital residence during the pendency of the divorce proceedings. On September 25, 2003, Thomas filed a motion for an evidentiary hearing on the spousal support issue pursuant to Civ. R. 75(N). Although the hearing was scheduled, it was continued once at the request of Thomas' counsel and a second time by consent of the parties. Then, on March 23, 2004, Mary Ann filed a motion to show cause why Thomas should not be held in contempt for failing to comply with the court's prior order of temporary spousal *Page 4 
support. In her affidavit attached to her motion, Mary Ann attested that as of the court's order, Thomas had not paid any spousal support as ordered. Thomas responded with a motion to dismiss in which he asserted that because the court had not yet held a hearing on the issue of temporary spousal support pursuant to Civ. R. 75(N), the motion to show cause was premature.
 {¶ 15} In the meantime, the parties attempted to settle their dispute through mediation. Those efforts were partially successful, and on December 8, 2004, the lower court filed a judgment entry incorporating the parties' agreement regarding the division of numerous marital assets.
 {¶ 16} The case proceeded to a final hearing over four separate dates, March 9, April 18, May 6, and August 1, 2005, at which Mary Ann, Thomas, and Thomas' son Mark, testified. In addition, at the March 9, 2005 hearing, the parties entered into a number of stipulations regarding their property issues. Key among those stipulations are the following:
 {¶ 17} The valuation date for valuing the marital assets would be December 31, 2003.
 {¶ 18} The appraised fair market value of the marital home was $185,000, with a mortgage payoff of $15,800 as of March 9, 2005.
 {¶ 19} The personal property appraisal performed by Baker Bonnigson Company was admissible.
 {¶ 20} The Vanguard account statements dated December 31, 2003, were admissible. *Page 5 
 {¶ 21} Each party was to be awarded whatever life insurance policies covered his or her individual lives and was to be responsible for any future premium payments.
 {¶ 22} Each party was to be awarded his or her CNA long-term care policies and was to be responsible for future premium payments.
 {¶ 23} The parties' vehicles were owned free and clear and were to be valued as of December 31, 2003, using NADA or Kelley Blue Book.
 {¶ 24} On January 26, 2006, the lower court magistrate issued a decision that included findings of fact and conclusions of law. The court determined that the marital home had $169,200 in equity as of December 31, 2003 (the stipulated date of the end of the marriage), awarded the home to Mary Ann, and awarded Thomas $84,600 as and for his interest in the home. Regarding Mary Ann's pension and the parties' IRAs, the court determined that the marital portion of these assets totaled $206,013.91. The court then awarded each party half of that amount and awarded Mary Ann $25,876.05 from Thomas to equalize the distribution. On the issue of spousal support, the court determined that its prior order of temporary spousal support of $950 per month had been appropriate and awarded Mary Ann a lump sum judgment of $23,750 for 25 months of unpaid support. The court, however, then also awarded Mary Ann spousal support of $450 per month for a period of five years commencing on September 18, 2003. Finally, on the issue of personal property, the court awarded Thomas $1,750 as reimbursement for his tools and equipment that had been in Mary Ann's possession and could not be found. In consideration of all of these issues, the court awarded Thomas an equitable distribution of $36,723.95 as and for his share of the total marital property. *Page 6 
 {¶ 25} Thomas responded by filing objections to the magistrate's decision. In particular, Thomas challenged the court's determination of the equity in the marital home; the court's refusal to award him a portion of the equity in the marital home as his separate, pre-marital property; the court's valuation of Mary Ann's IRA; the court's refusal to find that Mary Ann's withdrawal of $4,005 in marital funds in June 2003, constituted a dissipation of marital assets; the court's failure to divide the parties' personal property and automobiles, the values of which were set forth in the Baker Bonnigson appraisal; and the court's calculation of spousal support. The trial judge referred the matter back to the magistrate for a hearing on the objections, but also filed a judgment entry stating that the court would not consider any additional evidence regarding the objections absent a showing that said evidence was not available at the time of trial.
 {¶ 26} On November 7, 2006, the lower court issued an amended magistrate's decision. With regard to the marital home, the court gave Thomas credit for mortgage payments he had made while the divorce proceedings were ongoing and determined that the equity in the marital home subject to division was $174,320 as of July 25, 2005. Again, the court refused to award Thomas any portion of the equity in the marital home as his separate pre-marital property, because the parties' assets with regard to their prior home had become co-mingled and Thomas had failed to trace his allegedly separate property. The court did not alter its treatment of the $4,005 in funds that Mary Ann withdrew from the parties' accounts prior to the filing of the divorce. The court did, however, determine that Mary Ann's withdrawal of $10,000 from her IRA in July 2003, was in violation of a court order of June 25, 2003. The court therefore determined that *Page 7 
Thomas was entitled to one-half of that amount, or $5,000. The court did not modify its previous treatment of the parties' pension and IRAs, but did alter its spousal support award. In that regard, the court found that the previous temporary order of spousal support had been inappropriate and reduced that award to $450 per month. The court then awarded Mary Ann a lump sum judgment for past due support of $10,350. In making this award, the court noted that it had taken into consideration Thomas' payment of insurance premiums totaling $2,918. As to future support, the court awarded Mary Ann $450 per month for a period of five years, beginning on September 18, 2003. On the issue of personal property, the court again awarded Thomas $1,750 as reimbursement for his missing property that had been in the Mary Ann's possession. The court also awarded Thomas other specific property that was in Mary Ann's possession, awarded each party the remainder of the personal property that was then in their possession, and awarded each party their own car. Because Mary Ann's car was valued at $3,225 and Thomas' car was valued at $450, the court awarded Thomas $1,387.50 to equalize the car values. Accordingly, in recalculating the property distributions the court awarded Thomas a total distributive award of $59,071.45.
 {¶ 27} On January 4, 2007, the lower court issued a judgment entry incorporating the findings and conclusions of the magistrate's amended decision. It is from that judgment that both Mary Ann and Thomas now appeal.
 {¶ 28} The bulk of the parties' assignments of error challenge various aspects of the trial court's division of the their property. *Page 8 
 {¶ 29} When fashioning a division of marital property the Supreme Court of Ohio has long recognized that the trial court is vested with broad discretion. Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609. The trial court's division of marital property in a divorce will not be reversed on appeal absent a showing that the court abused its discretion. An abuse of discretion connotes a judgment that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 30} In his first cross-assignment of error, Thomas asserts that the court erred in determining that the entire proceeds from the sale of the parties' prior home (the Oakdale property) were marital assets.
 {¶ 31} "In dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, nonmarital property." Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. An appellate court reviews the trial court's factual determination of whether property is marital or separate property based on a manifest weight of the evidence standard.Carpenter v. Carpenter, 6th Dist. No. WD-01-028, 2002-Ohio-526, ¶ 11, citing Kelly v. Kelly (1996), 111 Ohio App.3d 641, 642. Accordingly, the judgment of the trial court will not be disturbed on appeal if supported by some competent, credible evidence. Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 468.
 {¶ 32} Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as *Page 9 
separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "Thus, traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property. * * * The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. See Franklin v. Franklin (June 8, 1984), Summit App. No. 16366, unreported * * *; Tupler v. Tupler (Jan. 12, 1994), Hamilton App. Nos. C-920852 and C-920887, unreported * * *." Peck, supra at 734.
 {¶ 33} The trial court determined that the equity in the parties' marital home was entirely marital property because Thomas had not met his burden of proof in establishing the portion of the equity that could be traced to his separate pre-marital property. The record reveals that the Oakdale property was Thomas' home when the parties first married in 1985, that Mary Ann moved into the home, contributed to the mortgage payments, and made financial and in-kind improvements to the home. The home was sold in February 1988, for $42,000. Upon that sale, a mortgage balance of $11,092.56 was paid off and, after other expenses, the parties netted $27,565.53. That amount, plus an additional $3,936.66, was rolled into the purchase price ($71,000) of the marital home on Fostoria Road. Thomas testified that the additional money was his inheritance from his aunt. There was, however, no evidence regarding what portion of the $27,565.53 could be considered as Thomas' separate, pre-marital property. At the time of the sale of the Oakdale home, Thomas' separate pre-marital property and Thomas' and Mary Ann's marital property had been commingled. Those commingled funds were then rolled over *Page 10 
into the equity in the marital home. The burden was on Thomas to establish what portion of the equity could be traced to his separate property. Although Thomas testified that a portion of the down payment for the marital home came from an inheritance from his aunt, and simple math establishes that the amount attributable to this inheritance would be $3,939.66, "[t]he finder of fact is the sole weigher of credibility of witnesses and testimony and can accept all, part or none of the testimony offered by a witness * * *." Breslau v. Breslau (June 14, 1999), 8th Dist. No. 56996. The trial court determined that Thomas had not established the source of these funds and it is not for us to judge Thomas' credibility on this issue.
 {¶ 34} Thomas' first cross-assignment of error is not well-taken.
 {¶ 35} Before we address the remaining assignments of error, we must determine the effect of the parties' stipulations on the proceedings below. As noted above, the parties entered into a number of stipulations on the first day of the trial. Key among those was the parties' agreement that the marriage terminated on December 31, 2003, and that that would be the date for valuing all marital assets. As we have stated previously, "[stipulations of fact bind the parties and, ordinarily, the court to the facts to which stipulations have been entered. The court is thus relieved of inquiry as to evidence which may exist to prove these facts." Toth v. Toth, 6th Dist. No. OT-05-006, 2005-Ohio-7001, ¶ 17, citing Cunningham v. J.D. Myers Co. (1964), 176 Ohio St. 410, 414;Hatch v. Lallo, 9th Dist. No. 20642, 2002-Ohio-1376.
 {¶ 36} Despite the parties' stipulations, the lower court determined that the equity in the marital home totaled $174,320 as of July 25, 2005, awarded the home to Mary *Page 11 
Ann, and awarded Thomas an equitable distribution of $87,160, or one-half of $174,320. The court, however, used other dates to establish the value of other assets. Consistent with the parties' stipulations, the court valued Mary Ann's IRA as of December 31, 2003. Inconsistent with the parties' stipulations, however, the court appears to have valued the parties' automobiles as of April 18, 2005, the date listed on the Kelley Blue Book valuations submitted to the court.
 {¶ 37} As we stated in Hickey v. Toledo (2001), 143 Ohio App.3d 781,788: "It has long been held in Ohio that formal stipulations of fact submitted to a tribunal are in the nature of a special verdict by a jury, being the equivalent of proof made by both parties. Ish v.Crane (1862), 13 Ohio St. 574, 579-580 * * *; Ramsey v. Ernoko,Inc. (1991), 74 Ohio App.3d 749, 754 * * *. `Thus, the stipulation perform[s] the same function as [a] factual determination rendered by a jury upon conflicting evidence.' State v. F.O.E. Aerie 2295 (1988),38 Ohio St.3d 53, 54 * * *." Accordingly, where the parties to a divorce action enter into stipulations regarding the duration of the marriage and values of marital assets, the trial court abuses its discretion by disregarding those stipulations and assigning other values to those assets. Snyder v. Snyder, 3d Dist. No. 14-06-52, 2007-Ohio-2676.
 {¶ 38} R.C. 3105.171(B) and (C)(1) provide that in a divorce proceeding, all marital property is to be divided equally unless an equal division would be inequitable. If an equal division would be inequitable, marital property is to be divided in an equitable manner. In dividing the parties' marital property upon divorce, a trial court must first determine what constitutes "marital property." R.C. 3105.171(B). "Marital property" means all real and personal property that was acquired by the spouses during the marriage *Page 12 
and that is not separate property. R.C. 3105.171(A)(3). "During the marriage," means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," or, if the court determines that the use of either of those dates would be inequitable, "the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2). "In any order for the division or disbursement of property or a distributive award made pursuant to [R.C. 3105.171] the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'" R.C. 3105.171(G).
 {¶ 39} In the magistrate's amended decision, the court never specified the dates that it used in determining the meaning of "during the marriage," and appears to have applied different dates to different assets. Although the court mentioned the stipulations, it is not clear that the court in fact applied them. On remand, the court must use the dates and values stipulated to by the parties and may then use its power to make a distributive award to achieve equity between the parties. See R.C. 3105.171.
 {¶ 40} Because all of the assignments of error that address property distribution issues are intertwined and will need to be reexamined on remand, we need not address them further here. Mary Ann's first assignment of error, and Thomas' second, third and fourth cross-assignments of error are well-taken.
 {¶ 41} Mary Ann's second and third assignments of error challenge various aspects of the trial court's spousal support award. Because the lower court will be reexamining *Page 13 
the property division issues, it must also reexamine the issue of spousal support. See R.C. 3105.18(B) and (C). Those assignments of error are therefore well-taken.
 {¶ 42} In his sixth assignment of error, Thomas also challenges the spousal support award. To the extent he asserts that the court failed to give him credit for various payments he made while the case was proceeding through the lower court, that issue will need to be reexamined by the trial court on remand. However, as to his argument that the lower court erred in failing to grant him an evidentiary hearing on his Civ. R. 75(N) motion, we fail to see how appellant was prejudiced by the delay. Ultimately, the lower court determined that its order of temporary spousal support had been inappropriate and lowered the amount to $450 per month, the same amount the court awarded in future spousal support. Accordingly, Thomas' sixth assignment of error is well-taken in part.
 {¶ 43} In his fifth assignment of error, Thomas asserts that the lower court erred in failing to find that Mary Ann's withdrawal of $4,005 from accounts between June 14 and 18, 2003, and on June 20, 2003, constituted a dissipation of marital assets for which Thomas was entitled to compensation.
 {¶ 44} As we stated above, R.C. 3105.171(B) and (C)(1) require marital property to be divided equally in a divorce proceeding unless an equal division would be inequitable. In determining whether an equal division of the marital assets would be inequitable, a court may consider whether one party has engaged in financial misconduct. To that end, R.C. 3105.171(E)(3) provides that if a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment or *Page 14 
fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property. The burden of proving financial misconduct is on the complaining party. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, ¶ 43. When determining whether to make a distributive award on the grounds of financial misconduct, the court must consider all of the factors identified in R.C. 3105.171(F) and any other factors it deems relevant. Because R.C. 3105.171(E)(3) states that the court "may" compensate the offended spouse for the financial misconduct of the other spouse, the trial court's decision to make or not make a distributive award to compensate for financial misconduct is reviewed under an abuse of discretion standard. Huener v. Huener (1996),110 Ohio App.3d 322, 326.
 {¶ 45} In finding that Mary Ann had not committed financial misconduct, the lower court determined that the withdrawals had been made during the course of the marriage and before the June 25, 2003, civil protection order had been entered.
 {¶ 46} In Jump v. Jump (Nov. 30, 2000), 6th Dist. No. L-00-1040, we interpreted the financial misconduct statute as follows:
 {¶ 47} "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. `Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' Id.
 {¶ 48} "The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., use of marital assets or funds during the pendency of or immediately prior to filing for divorce. See Babka v. Babka (1992), *Page 15 83 Ohio App.3d 428 (account liquidated `just prior to the parties' divorce'); Gray v.Gray (Dec. 8, 1994), Cuyahoga App. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse); Spychalski v. Spychalski (1992),80 Ohio App.3d 10 (dissipation of wrongful death settlement obtained while parties divorce complaint was pending). An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96 CA 10, unreported."
 {¶ 49} The evidence at the trial below revealed that the account from which the funds were withdrawn was a joint account and that Thomas regularly transferred money from Mary Ann's account into that joint account. Moreover, nothing in the record indicates that Mary Ann spent the funds on anything other than the marital home and living expenses. Accordingly, we cannot say that the trial court erred in finding that Mary Ann did not commit financial misconduct and Thomas' fifth assignment of error is not well-taken.
 {¶ 50} Finally, in her fourth assignment of error, Mary Ann challenges the trial court's decision to award Thomas $1,750 as reimbursement for his items of personal property that were left in the marital home and turned up missing. The court described the items as "various tools and equipment" and found that "based upon the testimony of the parties * * * the value of the missing property is $1,750." The court then determined that Mary Ann was responsible for the safekeeping of this property and, therefore, was responsible for its loss. This was essentially a finding that Mary Ann had fraudulently disposed of an asset and that Thomas was therefore entitled to a distributive award. Upon *Page 16 
a review of the record, we cannot say that the court erred in making this finding. Thomas testified that in December 2003, he came to the marital home and videotaped its contents. Then, when he returned to retrieve his property in December 2004, a number of items that were on the video recording were missing. He submitted a list of the missing items to the court below which included the replacement cost of the items. That list totals $3,081.97, but Thomas also testified that he receives a ten percent discount from Sears and that the replacement cost listed did not include his discount. Throughout Thomas' testimony regarding the missing items, Mary Ann regularly interrupted, contesting that some of the items were missing.
 {¶ 51} In light of the record below and the standards governing awards for dissipation of property, we cannot say that the trial court abused its discretion in awarding Thomas $1,750 for the missing property, and Mary Ann's fourth assignment of error is not well-taken.
 {¶ 52} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded to that court for further proceedings consistent with this decision. The parties are ordered to share equally the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART. *Page 17 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR. *Page 1