**In Re: Appeal of WHITPAIN TOWNSHIP BOARD OF SUPERVISORS from the Decision of Berkheimer Associates, Whitpain Township Tax Hearing Officer, Dated June 26, 2002 Regarding James A. Unruh and Candice L. Unruh**

**Appeal of: Whitpain Township.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2007.

Decided Feb. 13, 2008.

J. Peirce Anderson, Blue Bell, for appellant.

Stewart M. Weintraub, Philadelphia, for appellees.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Whitpain Township appeals from the order of the Court of Common Pleas of Montgomery County (trial court) which upheld the decision of Berkheimer Associates, Whitpain Township Tax Hearing Officer (Berkheimer Associates), granting a refund of the Earned Income Tax paid by James A. and Candice L. Unruh (the Unruhs or Taxpayers) for the years 1998, 1999, and 2000, in the amount of $193,963.00 plus interest. We affirm.

The facts as stipulated before the trial court are straightforward. James A. Unruh was employed by UNISYS Corporation from April 1980 through April 30, 1998, serving as its CEO from 1990 to 1998. Mr. Unruh's main office during his employment with UNISYS was in Whitpain Township. At various times between 1989 and 1994, Mr. Unruh received non-qualified stock options from UNISYS, none of which were exercisable on the dates they were granted and none of which were exercised on the dates they vested.[1]

Mr. Unruh retired effective May 1, 1998, and shortly thereafter, the Unruhs moved to Paradise Valley, Maricopa County, Arizona. The Unruhs' previous residence had been Lower Merion Township, Pennsylvania. After his retirement, Mr. Unruh exercised his stock options in 1998, 1999, and 2000, at a total gain of $38,792,548.00. When Mr. Unruh exercised the options, UNISYS withheld earned income tax from the resulting gains pursuant to the Whitpain Township Earned Income Tax Ordinance No. 203–1, in the amounts of $97,977.00 based on income of $19,595,424.00 for 1998; $89,949.00 based on income of $17,989,724.00 for 1999; and $6,037.00 based on income of $1,207,400.00 for 2000. The Unruhs filed a request for a refund with Berkheimer Associates,[2] arguing that the Township had no authority to impose this tax upon them as Mr. Unruh was no longer employed within the Township and never resided there. Berkheimer Associates issued a Notice of Decision dated June 26, 2002, which granted the refund petition conditionally, concluding that because Mr. Unruh was neither a resident nor employed within Whitpain Township at the time he exercised the stock options, the Township did not have the authority to impose the tax.[3]

1. Copies of the first page of the Stock Options, which specifies when the option may be exercised, when it expires, as well as other pertinent restrictions, are attached to the Stipulation of Facts, dated November 21, 2005, and appear in the Reproduced Record (R.R.) at 45a–51a.

2. Section 8425 of the Local Taxpayers Bill of Rights Act, 53 Pa.C.S. § 8425, states that a "taxpayer who has paid an eligible tax to a local taxing authority may file a written request with the local taxing authority for refund or credit of the eligible tax."

3. The refund was granted conditionally, based on the fact that the tax hearing officer was unable to determine the actual amount of the refund due to the Unruhs because he was without specific information for the year 1999. That information related to a separate issue raised in their petition for a refund regarding the taxation of his severance pay which is not relevant herein. The tax hearing officer also ruled against the Unruhs on the issue of whether Mr. Unruh should be allowed to prorate his income based on the amount of time he spent actually working within the Township, because he concluded that "[o]rdinance #203 of 1990, does not specify that non-residents are taxable only for services and or work performed with the township, there is no legal basis for this proration." Brief for Appellant, Appendix C, p. 24. Although the Unruhs preserved this issue by filing a cross-petition with the trial court, we need not address this issue as it does not affect our final decision in this matter.

The Township appealed, arguing that: (1) the finding and conclusion by Berkheimer Associates that the stock options paid to Mr. Unruh while employed by UNISYS were not taxable to him because he exercised them after he retired constituted an error of law; (2) the decision is contrary to the definition of "earned income" set forth in Section 13 of the Local Tax Enabling Act (LTEA),[4] 53 P.S. § 6913 and in the Whitpain Township Earned Income Tax, Ordinance No. 203-1, § 136.41.A; (3) the decision is contrary to the law as interpreted by the Pennsylvania Supreme Court in *Marchlen v. Township of Mt. Lebanon*, 560 Pa. 453, 746 A.2d 566 (2000); (4) stock options are compensation earned and received when granted and valued for tax purposes when exercised; and (5) that all or part of the claim is barred by 53 Pa.C.S. § 8425.[5] The trial court affirmed the decision of the hearing officer, concluding that *Marchlen* was controlling and therefore, because Mr. Unruh exercised the stock options after he retired, the Township clearly had no authority under the LTEA to impose its earned income tax upon the income derived from the exercise of the options.

■■■ On appeal to this court,[6] we are faced with a single issue, that is, whether stock options like those involved here, when granted to a non-resident taxpayer during his employment within the Township but exercised after the taxpayer has ceased that employment, are subject to the Township's earned income tax. The parties agree, and it is beyond dispute, that the LTEA authorizes a municipality to tax earned income, but only of those who are employed or reside within its territorial limits. It is similarly undisputable that under the Pennsylvania Supreme Court's decision in *Marchlen*, stock options constitute "earned income" within the meaning of Section 13 of the LTEA.[7] Where the parties disagree is over the issue of when such income is deemed to be received, and thus subject to the taxing power of the municipality. The Township argues that Mr. Unruh both "earned" and "received" compensation subject to its earned income tax ordinance when he was granted the stock options, but it properly computed and imposed the tax on the value when exercised. Taxpayers argue that when the income is earned is irrelevant, and that the taxable income from the grant of options is received when the options are exercised.[8]

■■■ We are mindful of two principles involved in considering the Township's earned income tax ordinance, and that is, first, that the Township can not levy any tax unless the power to do so has been plainly and unmistakably conferred, *Price v. Tax Review Board*, 409 Pa. 479, 483, 187 A.2d 280, 282 (1963); and second, that taxing statutes must be strictly construed in favor of the taxpayer and against the Township; *Id., Commodore Perry Sch. Dist. v. City of Meadville*, 863 A.2d 122,

---

4. Act of December 31, 1965, P.L. 1257, *as amended.*

5. The Unruhs filed a timely cross-appeal to preserve alternative issues not relevant here. The trial court did not reach the Unruhs' alternative arguments.

6. As this case was tried by the trial court on stipulated facts pursuant to Pa. R.C.P. No. 1038.1, the scope of our review encompasses only whether the trial court committed an error of law and such review is plenary. *Triage, Inc. v. Prime Ins. Syndicate, Inc.*, 887 A.2d 303 (Pa.Super.2005), *app. den.*, 587 Pa. 699, 897 A.2d 460 (2006).

7. 53 P.S. § 6913.

8. We note that the ordinance provides that "[t]he tax levied under this Article shall be applicable to earned income ... received [during the calendar year.]" Ordinance 203, § 136–42 C.

127 (Pa.Cmwlth.2004). As noted above, Section 2 of the LTEA gives authority to municipalities, such as the Township, to enact taxing ordinances and impose an earned income tax on residents and non-residents employed within the municipality, should they see fit to do so. This section states in pertinent part:

> The duly constituted authorities of the following political subdivisions, cities of the second class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, townships of the second class, school districts of the second class, school districts of the third class, and school districts of the fourth class, in all cases including independent school districts, may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property *within the limits of such political subdivisions*....

53 P.S. § 6902 (emphasis added). Section 13 of the LTEA defines "earned income" as follows:

> Salaries, wages, commissions, bonuses, incentive payments, fees, tips and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property....

53 P.S. § 6913.[9] Whitpain Township's definition of earned income is identical to the LTEA's definition. Neither the Act nor the ordinance addresses the time of receipt for such items as stock options.

The stock options granted to Mr. Unruh were non-qualified stock options that carried with them certain restrictions. Mr. Unruh had to wait at least one year after the date each option was granted to exercise it, the options expired after ten years, and, the options were not transferable except by will or the laws of descent and distribution. The value of a stock option is that the owner has the potential benefit of any increase in share price without the risk of price decline associated with an investment purchase of the stock. However, because the stock price will fluctuate, and because of the restrictions on their exercise and transfer, the value of options like these is highly speculative at the time of issuance. When the option is exercised, *i.e.*, the shares are purchased at the option price and, thus, available to the purchaser for subsequent sale at the market price, there is a measurable gain equal to the difference between the option price and the fair market value of the stock [market spread].

In *Marchlen*, the Supreme Court considered, as a matter of first impression, whether stock options issued to an employee constituted compensation taxable by

---

**9.** We note that under the current version of this section, which was amended in 2004, the definition of "earned income" now reads as follows: "Compensation as determined under section 303 of the act of March 4, 1971 ... known as the 'Tax Reform Code of 1971,' and regulations in 61 Pa.Code Pt. I Subpt. B Art. V (relating to personal income tax)...." Section 303 of the Tax Reform Code of 1971, 72 P.S. § 7303, in turn, incorporates recognition provisions of the Internal Revenue Code of 1986, as amended, and regulations of the United States Treasury. Section 101.6(f)(1) of Title 61 of the Pennsylvania Code now provides, in pertinent part, that "[c]ompensation in the form of ... nonqualified stock options shall be considered to be received ... [w]hen the option is exercised if the stock subject to the option is free from any restrictions having a significant effect on its market value." We note that, although there were restrictions on the exercise of Mr. Unruh's options, the record does not reflect any restrictions on the stock subject to the options.

Mt. Lebanon as earned income under the LTEA. Louis Marchlen received non-qualified stock options from his employer, ALCOA, in 1984 and 1985. Mr. Marchlen did not include the market spread at the time he exercised the options in 1994 and 1995 on either his 1994 or 1995 Mt. Lebanon tax return. The Township treasurer informed Mr. Marchlen that the recognized gain from the exercise of the options should have been included as earned income on both of the returns in question. On appeal, the trial court reversed the treasurer and held that the income was not earned income but investment income, and upon further appeal, this court affirmed. Our Supreme Court, however, concluded that, "[b]y the terms of the LTEA itself and Mt. Lebanon's own definition of earned income, we must therefore agree ... that the stock options in this case constitute a form of 'incentive payments' or 'other compensation received by a person ... for services rendered ... whether in cash or in property....' Accordingly, the stock options are taxable as earned income under the LTEA." 560 Pa. at 459, 746 A.2d at 569.

Relying on the Supreme Court's language in *Marchlen* that "it is precisely [because the value of the option is speculative when granted] that the taxing authority must wait until the exercise of the stock option to compute the associated tax liability," *Id.* at 461, 746 A.2d at 570 (footnote omitted), the Township asserts that Mr. Unruh's stock options should be recognized as compensation for purposes of the earned income tax when granted, but taxed on the value when exercised. We disagree for several reasons.

First, *Marchlen* says no such thing. The Court's language in footnote ten states:

> [t]hat the options have no readily ascertainable value until they are exercised is relevant to the question of *when the stock options should be recognized as compensation,* and therefore taxed, but it is irrelevant to the question of *whether* stock options constitute compensation subject to taxation.

*Id.* (emphasis added). If anything, this language suggests that such recognition of income should occur when the value of the option can be ascertained, *i.e.,* when exercised.

Moreover, as noted in footnote 9, the current regulations, which went into effect in August of 2000,[10] clearly provide that compensation in the form of options such as these "shall be considered to be received ... [w]hen the option is exercised." 61 Pa.Code § 101.6(f)(1). The record before us does not reflect when in 2000 Mr. Unruh exercised the last of his options, but since taxpayers do not argue its applicability, we assume the regulation does not apply to any of these transactions. It is not entirely irrelevant to our analysis, however. In the absence of any statutory change prompting the regulation, or any suggestion to the contrary, we believe we can assume the regulation enacted shortly after the events at issue expressed the Department of Revenue's ongoing interpretation of the proper implementation of the statutes taxing compensation. Thus, although not binding here, we find it persuasive, particularly since it appears to be consistent with long standing federal tax law.[11]

---

10. *See* 30 Pa. B. 3938 (2000).

11. We find the United States Supreme Court's reasoning in *Commissioner v. LoBue,* 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956),

instructive. After discussing the restrictions associated with LoBue's non-qualified stock options which, as in this case, made it difficult to ascertain their value, and the fact that it had been the "uniform Treasury practice

Finally, the Township's argument that the taxable income can be deemed received at the time the option is granted, but the amount of that income measured as of some later date of exercise, is simply inconsistent with the statutory scheme. The LTEA provides that by April 15 of the year following receipt of earned income, the taxpayer must file a return and pay the [balance of] tax due [after withholding]. No provision is made for deferred computation and imposition of tax in some later year.[12] Plainly, unless options were exercised in the same year in which they were granted (or before April 15 of the following year), it would be impossible to file a timely return under the Township's proposed analysis. It would appear obvious that the General Assembly must have intended the taxable income attributable to such items as stock options to be deemed received at such time as a value can be determined for purposes of filing a tax return the following April (and for purposes of employer withholding).[13] Moreover, income is subject to tax at its present value when recognized, not at some value it may (or may not) attain in the future. Since the value of Mr. Unruh's options was speculative when they were granted, the

suggestive *dicta* in *Marchlen*, the holding in *LoBue*, and the current regulation to the effect that the income they represent should be recognized and valued when they were exercised is both logical and compelling.

For all the above reasons, we hold that the taxable income from Mr. Unruh's stock options was received when those options were exercised and could be taxed upon a readily ascertainable value. Because Mr. Unruh neither lived nor worked in the Township at that time, it had no authority to tax such income.

Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, this 13th day of February, 2008, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby AFFIRMED.

---

since 1923" to measure the gain realized as the difference between the option price and the market price at the time the option was exercised, the Court then concluded that "LoBue realized taxable gain when he purchased the stock" (i.e., when he exercised the options) and that, "[t]he taxable gain to LoBue should be measured as of the time the options were exercised and not the time they were granted." *Id.* at 248, 249, 76 S.Ct. 800.

12. The Whitpain ordinance echoes the LTEA in this regard.

13. Of course; financial experts can sometimes estimate value even for future interests subject to unknown contingencies, but those estimates can vary widely, and we find the likelihood nil that the General Assembly intended to require employers and employees to hire such experts to compute earned income taxes.