OPINION
{¶ 1} Richard M. Wardrop, Jr. and John G. Hritz appeal from the trial court's judgment entry affirming a decision of the Middletown Income Tax Review Board denying their request for tax refunds.
 {¶ 2} Wardrop and Hritz advance seven assignments of error on appeal. First, *Page 2 
they contend the trial court erred in affirming the decision of the Middletown Income Tax Review Board. Second, they claim the trial court erred in subjecting income they earned outside the city to its income tax. Third, they assert that the trial court erred in allowing the city to tax income they realized after the termination of their employment in the city. Fourth, they argue that the trial court erred in refusing to allocate their income based on days worked in and out of the city. Fifth, they contend the trial court erred in finding res judicata applicable to part of Wardrop's appeal from the Middletown Income Tax Review Board's ruling. Sixth, they claim the trial court erred in finding that payments made under a company retirement plan were subject to city income tax. Seventh, they contend the trial court erred in finding that the appreciated value of certain nontransferable stock options and restricted stock was subject to city income tax.
 {¶ 3} The pertinent facts are set forth in the trial court's August 30, 2007 decision and judgment entry as follows:
 {¶ 4} "* * * From 1998 through 2003, Wardrop held the positions of Chief Executive Officer and Chairman of the Board of Directors for AK Steel Corporation and AK Steel Holding Corporation (jointly `AK Steel'). The corporate offices of AK Steel, including Wardrop's office, were located within the city of Middletown (`Middletown').
 {¶ 5} "Wardrop resigned from his positions at AK Steel, effective September 13, 2003. After his resignation, Wardrop received a significant amount of compensation from AK Steel as a direct result of his prior employment. When Wardrop separated from AK Steel, he held 392,138 restricted shares of AK Steel stock. The restrictions on the shares lapsed on April 8, 2004, resulting in an appreciation valued over $2.3 million. AK Steel granted Wardrop 300,000 stock options during the course of his employment. Wardrop exercised all of the options in December 2004, and received approximately $1.6 million in profit. Subsequent to his resignation, AK Steel also paid Wardrop approximately $27.8 *Page 3 
million in benefits under the terms of the AK Steel Corporate Executive Minimum and Supplemental Retirement Plan (`SERP'). Wardrop received the payment in 2004. AK Steel withheld and submitted 1.5 percent of Wardrop's total compensation to Middletown as city income tax.
 {¶ 6} "Hritz worked for AK Steel for nine years. In 2003, Hritz was President of AK Steel. Previously, Hritz held the position of `Executive Vice-President/Operations and Commercial.' Hritz, like Wardrop, resigned from his position effective September 13, 2003.
 {¶ 7} "Hritz also received a significant amount of compensation from AK Steel after his resignation. He received a lump sum payment totaling more than $2 million in accordance with an `Executive Office Severance Agreement' he executed with AK Steel on June 19, 2002. Hritz also received approximately $1.5 million in compensation from a `Management Incentive Payment' and a single month's salary. AK Steel paid Hritz approximately $7.7 million in benefits under the terms of the AK Steel SERP. Hritz received all of this compensation in 2004. When Hritz separated from AK Steel, he possessed 123,249 restricted shares of AK Steel stock. The restrictions on the shares lapsed on November 15, 2004, resulting in an appreciation valued at nearly $600,000. AK Steel granted Hritz 80,000 stock options during the course of his employment. Hritz exercised one-half of the options in November 2004 and the other half in December 2004. Hritz received $340,500 in profit by exercising his stock options. As with Wardrop, AK Steel withheld and submitted 1.5 percent of Hritz's income from these various sources to Middletown as city income tax.
 {¶ 8} "At all times pertinent to this action, AK Steel's corporate headquarters was in Middletown, Ohio. Neither Wardrop nor Hritz resided in Middletown at any time relevant to this case. *Page 4 
 {¶ 9} "Appellants filed income tax returns with Middletown for the tax year 2004. Neither worked at AK Steel in 2004. The initial returns filed by Appellants sought a refund of a percentage of the income tax that they paid based on the average number of work days each was physically present in the city over the five previous years. Middletown denied the refund requests.
 {¶ 10} "Wardrop later filed an amended tax return in which he reduced the amount of his taxable income. He decreased the amount of his taxable income on the return by making two alterations. First, Wardrop excluded his SERP payment. Second, he valued his restricted stock and stock options at zero, which was their market value as of the date of his resignation. This recalculation of taxable income resulted in a larger refund request. Middletown denied the refund request.
 {¶ 11} "Hritz filed two amended returns. In the first return, Hritz deducted his SERP benefits and his severance payment from his taxable income. In the second amended return, Hritz excluded the post appreciation value of his restricted stock and his stock options. Each amended return, as a result of the deductions of income, sought a larger refund. Middletown rejected both returns.
 {¶ 12} "Wardrop and Hritz appealed the adverse rulings on their tax returns to the City of Middletown Income Tax Review Board (`Board'). After conducting a hearing on the matter, the Board rejected Appellants' claims for refunds. The Board made six specific conclusions based on the Middletown tax code. First, the Board concluded that the SERP payments are `earnings designated as deferred compensation' and, as such, are taxable. Second, the Board determined that the stock options and restricted stock are taxable as income. Third, the Board held that the value of the stock options was fixed when the options were exercised. Fourth, the Board concluded neither the SERP payments nor the value of the shares of stock is subject to allocation based on the *Page 5 
number of days the taxpayers worked in Middletown. Fifth, the management incentive payment and the one month's salary paid to Hritz are taxable as income. Sixth, none of the income is subject to allocation based on the average number of days that Appellants worked in Middletown." (Doc. #35 at 1-4).
 {¶ 13} As noted above, the trial court affirmed the decision of the Middletown Income Tax Review Board on August 30, 2007. It held that all of the income at issue was subject to Middletown tax because appellants earned the money while working at AK Steel even though it was not paid until after their resignation. The trial court further held that all of the income was taxable under Middletown Codified Ordinances Chapter 890. It concluded that Middletown was not required to apportion the income for tax purposes based on the number of days appellants worked within and outside of the city. The trial court further held that Middletown's failure to apportion the income did not violate appellants' due process rights. The trial court also held that collateral estoppel precluded Wardrop from even raising a constitutional challenge because he had raised the same issue in an earlier case, Wardrop v. City ofMiddletown, Butler C. P. No. CV 2001 12 2867, which involved a prior year's taxes. The trial court next determined that appellants' SERP payments were taxable as deferred compensation, that their stock options properly were valued at the time of exercise, and that their restricted stock properly was valued when the restrictions expired. Finally, the trial court held that Hritz's severance payment and management incentive payment were taxable by Middletown and not subject to apportionment. Based on the foregoing determinations, the trial court held that the decision of the Middletown Income Tax Review Board was "not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." This timely appeal followed.
 {¶ 14} Our standard of review in this R.C. Chapter 2506 appeal is "more limited in *Page 6 
scope" than the standard applied by the trial court when reviewing the decision of the Middletown Income Tax Review Board. Henley v. YoungstownBd. of Zoning Appeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493. We "review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. (citations omitted). The trial court's application of law to undisputed facts involves a "question of law" that we may review under R.C. Chapter 2506. Id. at 148. Similarly, we may consider whether the trial court abused its discretion in applying the law to the facts. Id. With these standards in mind, we turn to the issues before us.
 {¶ 15} In their first four assignments of error, which they have briefed and argued together, appellants raise two issues. First, they contend Middletown cannot tax them for income they received in 2004 following their resignation in 2003. Second, they claim Middletown cannot tax them for income they earned outside the city. Therefore, even assuming that the compensation they received after their resignation is taxable, appellants assert that Middletown was required to apportion it based on the number of days they worked within and outside the city. They contend the trial court erred insofar as it rejected these arguments and affirmed the judgment of the Middletown Income Tax Review Board.
 {¶ 16} Upon review, we find no merit in appellants' first argument. Appellants stress that they did not realize the income at issue until after the termination of their employment. Therefore, they assert that it is not subject to Middletown tax. The applicable ordinance imposes a tax on "income earned or received" by nonresidents "for work done or services performed or rendered in the City." MCO § 890.03(a)(2). The trial court concluded that the critical issue was when appellants earned the income, not when *Page 7 
they received it. We agree. Compensation earned by a nonresident employee cannot evade municipal taxation by the simple expedient of being deferred into a subsequent year when the nonresident no longer works in the taxing jurisdiction.
 {¶ 17} Appellants' second argument requires a more detailed analysis. They assert that income they earned while working on behalf of AK Steel outside the territorial jurisdiction of Middletown is not subject to municipal income tax. Because they spent a substantial amount of time working out of town, Wardrop and Hritz contend Middletown was required to apportion their income, for municipal tax purposes, based on the number of days they worked within the city. Appellants assert that Middletown's own tax ordinance restricts its tax on nonresidents to compensation for work performed in the city. Finally, even if we do not find that Middletown's ordinance contains such a restriction, appellants assert that imposing a municipal tax on nonresidents' income earned outside the city would violate due process.
 {¶ 18} As a means of analysis, we first will determine whether Middletown's tax ordinance authorized it to tax all of appellants' compensation, without regard to the time they spent working outside the city, or whether the ordinance required apportionment of the income on a "days in" and "days out" basis. If we find that Middletown's ordinance did authorize the city to tax all of the compensation at issue, we then will consider whether such a scheme violates due process.
 {¶ 19} We begin with a review of MCO § 890.03(a)(2), which imposes a municipal tax "[o]n all qualifying wages, commissions, other compensation and other taxable income earned or received during the effective period of this Chapter by nonresidents for work done or services performed or rendered in the City." In addition to MCO § 890.03(a)(2), the trial court relied on Article III of the Rules and Regulations Pertaining to Middletown Income Tax. Article III, promulgated by the Middletown Superintendent of Taxation under *Page 8 
authority granted by the Middletown City Council, is intended to define and amplify the city's tax ordinance. See, e.g., MCO § 890.08(b). Article III(A)(2)(a) of the rules and regulations provides: "In the case of individuals who are not residents of the City of Middletown, under Section 890.03, paragraph A-2 of the Ordinance, the tax is imposed on all salaries, wages, commissions and other compensation earned during the effective period of the Ordinance for work done or services performed or rendered or as a result of employment within the City of Middletown[.]"
 {¶ 20} In our view, MCO § 890.03(a)(2) unambiguously restricts Middletown to taxing nonresidents for work activities occurring within its territorial boundaries. It provides that the income tax applies to compensation "for work done or services performed or rendered in the City." Insofar as appellants received compensation for work performed on behalf of AK Steel outside of the city, Middletown has no authority under MCO § 890.03(a)(2) to tax it.
 {¶ 21} We previously recognized this territorial limitation in MCO § 890.03(a)(2) when reviewing an earlier version of the ordinance inToliver v. City of Middletown (June 30, 2000), Butler App. No. CA99-08-147. The version at issue in Toliver was notably broader than the current version. It taxed nonresidents' compensation "for work done or services performed or rendered in the city or as a result of employment in the City." (Emphasis added.) We observed that "[t]he consistent use of the phrase `in the City' reflects a legislative intent to restrict the tax on nonresidents to their work activities and/or actual employment occurring within its territorial boundaries so as not to violate Article XVIII of the Ohio Constitution." Id. We then applied the ordinance to nonresident delivery drivers employed by a Pennsylvania company who spent approximately one hour per day driving in Middletown. We noted the absence of any authority for Middletown to tax the drivers for work done outside the city limits. We also rejected Middletown's argument that *Page 9 
the drivers earned their compensation "as a result of employment in the City." Consequently, we held "that Section 890.03(a)(2) authorizes the city of Middletown to collect income taxes on that portion of the MG Drivers' salaries attributable to `work done' within the city of Middletown." In other words, we required apportionment of the drivers' income for tax purposes based on the time they spent actually working within the city.
 {¶ 22} If we were addressing the same version of MCO § 890.03(a)(2) at issue in Toliver, we would be inclined to find that Wardrop and Hritz earned all of the compensation at issue "as a result of employment in the City." Unlike the delivery drivers in Toliver, who worked for a Pennsylvania trucking company and received paychecks from Pennsylvania, appellants worked for AK Steel, a Middletown company. Although Wardrop and Hritz frequently took out-of-town business trips, they undoubtedly received their income "as a result of employment in the City" with AK Steel. As we recognized in Toliver, the phrase "`as a result of employment' anticipates that there can be work performed outside the City limits which is the result of being employed within the city limits." That is precisely the situation here insofar as appellants performed work on behalf of AK Steel outside of Middletown.
 {¶ 23} Notably, however, the applicable version of MCO § 890.03(a)(2) now only taxes nonresidents' income "for work done or services performed or rendered in the City." The Middletown City Council previously deleted the additional language "or as a result of employment in the City."[1]
Under the current version of the ordinance, then, Wardrop and Hritz may be taxed by Middletown only for work actually done within the city limits. *Page 10 Toliver, supra. In reaching this conclusion, we are mindful of Article III(A)(2)(a) of the rules and regulations promulgated by the Middletown Superintendent of Taxation. As set forth above, Article III(A)(2)(a) purports to authorize taxation of nonresidents' income "for work done or services performed or rendered or as a result of employment within the City of Middletown[.]" The trial court quoted Article III(A)(2)(a) and relied on it to find that "[s]ince the income Appellants received in 2004 was `a result of their employment with a business located within the City of Middletown, it is taxable under MCO Chapter 890." (Doc. #35 at 12-14).
 {¶ 24} It is beyond dispute, however, that the Superintendent of Taxation, who is charged with promulgating rules and regulations to define and amplify Middletown's tax ordinance, cannot add to or exceed the plain language of the ordinance itself. See, e.g., Ransom RandolphCo. v. Evatt (1944), 142 Ohio St. 398, 407-408; City of Cincinnati v. DeGolyer (1969), 26 Ohio App.2d 178, 181-182, affirmed (1971),25 Ohio St.2d 101. By interpreting MCO § 890.03(a)(2) to include the now nonexistent phrase "or as a result of employment within the City of Middletown," the Superintendent of Taxation is adding to the plain language of the ordinance and exceeding proper rule-making authority.[2] Therefore, the trial court erred in relying on Article III(A)(2)(a) to find all of appellants' income taxable under MCO Chapter 890 because they received the pay "`a result of their employment with a business located within the City of Middletown[.]" Under the ordinance, the relevant inquiry was how much of the income appellants received was "for work done or services performed or rendered in the City." *Page 11 
 {¶ 25} Middletown nevertheless insists that all of the income at issue was received by appellants for work done in the city — even when they were not physically present. In support of this proposition, the city relies on appellants' status as high-ranking executives at AK Steel. It points out that Wardrop and Hritz have permanent offices at AK Steel's corporate headquarters in Middletown and have a support staff there. The city reasons that AK Steel operates under appellants' direction and control regardless of whether they physically are present.
 {¶ 26} We are unpersuaded by the city's argument. AK Steel Corporation maintains permanent corporate offices in Middletown and, presumably, is responsible for paying a corporate income tax. Likewise, any support staff present performing work at AK Steel's headquarters is subject to the city's income tax. Under MCO § 890.03(a)(2), Wardrop and Hritz also are subject to a municipal tax on income "for work done or services performed or rendered in the City."
 {¶ 27} We see nothing in MCO § 890.03(a)(2), however, authorizing Middletown to tax appellants for work performed on AK Steel's behalf when they are outside the city. As appellants note, the ordinance does not contain a "key executive" or "top executive" exception to its territorial limitation. It is fiction to suggest, as Middletown does, that appellants' work was performed "in the City" when they were not there. Even if MCO § 890.03(a)(2) were ambiguous as it relates to the taxation of income earned by high-level executives who frequently work out of town, we still would find in favor of Wardrop and Hritz. It is well-settled that any doubt in the construction of a taxing statute must be resolved in favor of the taxpayer. Columbia Gas Trans. Corp. v.Levin, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 34. In the present case, however, the plain language of MCO § 890.03(a)(2) limits Middletown to taxing nonresidents' income only "for work done or services performed or rendered in the City." Regardless of their key role at AK Steel, *Page 12 
appellants manifestly were not working "in the City" when they were working out of the city.
 {¶ 28} We are equally unpersuaded by Middletown's argument that the disputed income is all taxable under MCO § 890.03(a)(2) because it "relates solely and directly to [the appellants'] capacities as corporate executives, not to their transitory duties and whereabouts." The essence of this argument is that appellants' income is distinguishable from regular pay. The city contends their compensation, which included SERP payments, severance payments, income from the sale of previously restricted stock, and income resulting from the exercise of stock options, was available only to high-level employees and was not earned based on their location on a particular day.
 {¶ 29} It is true that the form of the compensation at issue differs from traditional hourly wages. As AK Steel executives, appellants certainly received some non-traditional forms of compensation, including those mentioned above. The fact remains, however, that appellants received this compensation as payment for work performed on behalf of AK Steel. To the extent appellants performed that work within the city, it was subject to taxation under MCO § 890.03(a)(2). To the extent they performed the work out of the city, it was not subject to taxation under the ordinance. Therefore, appellants were entitled to apportion the income, for municipal tax purposes, based on the number of days they worked within the city. Moreover, absent any guidance from Middletown prescribing an alternative method of allocation, appellants adopted a reasonable allocation based on the average number of days worked within the city over the preceding five years.
 {¶ 30} We also are unconvinced by Middletown's reliance on Wardrop v.City of Middletown, Butler C.P. No. CV 2001 12 2867 ("Wardrop I"), to support its claim that all of appellants' pay is taxable under MCO § 890.03(a)(2). In that case, the common pleas court rejected a prior attempt by Wardrop to obtain a refund of taxes paid on income *Page 13 
earned while he was working outside the city. The trial court citedWardrop I to support its finding that appellants' income need not be apportioned based on days spent working in and out of the city. Having reviewed the common pleas court's 2002 ruling in Wardrop I, we note that it relied on the now nonexistent language in MCO § 890.03(a)(2) taxing nonresident income earned "as a result of employment in the City." InWardrop I, the Middletown Income Tax Review Board denied Wardrop a refund based on a finding that his income was for work performed "as a result of employment in the City." The common pleas court's analysis inWardrop I also stressed this portion of the ordinance. Wardrop I at 2. Because MCO § 890.03(a)(2) no longer contains the language upon which the tax board and the common pleas court relied in Wardrop I, we find the decision to be of little assistance.
 {¶ 31} Finally, having found that Middletown's own ordinance did not permit the city to tax all of appellants' compensation and that apportionment was required, we need not resolve appellants' alternative argument that imposing a tax on income a nonresident earns while working outside of Middletown would violate due process. See Hall China Co. v.Public Utilities Comm. (1977), 50 Ohio St.2d 206, 210 (recognizing "that constitutional issues should not be decided unless absolutely necessary"); Smith v. Egleston (June 16, 1986), Warren App. No. CA84-10-068 (noting "the policy of appellate courts to avoid the resolution of constitutional issues whenever possible").
 {¶ 32} Based on the reasoning set forth above, we sustain appellants' first, second, and fourth assignments of error, which address Middletown's ability to tax nonresidents' income for work performed outside the city and the need for apportionment. We overrule the third assignment of error, which addresses Middletown's ability to tax compensation received after the termination of appellants' employment.
 {¶ 33} In their fifth assignment of error, appellants contend the trial court erred in *Page 14 
finding res judicata applicable to part of Wardrop's appeal from the Middletown Income Tax Review Board's ruling. In particular, they challenge the trial court's finding that "as to Wardrop, the issue of whether due process requires Middletown to apportion his taxes based on the time he worked in and out of the City of Middletown is barred by collateral estoppel under res judicata."
 {¶ 34} The trial court sua sponte raised the foregoing issue based on the common pleas court's earlier determination in Wardrop I that due process did not require apportionment of compensation Wardrop had received in a prior year. Appellants assert that the issues in the present case are not identical to those in Wardrop I. They also argue that the trial court erred in sua sponte raising the defense of res judicata.
 {¶ 35} Upon review, we need not decide whether the trial court erred in applying res judicata to Wardrop's due process argument. As set forth above, we have no occasion to reach the due process issue because MCO § 890.03(a)(2) itself did not permit the city to tax appellants' compensation for work done outside of the city. Accordingly, appellants' fifth assignment of error is overruled as moot.
 {¶ 36} In their sixth assignment of error, appellants claim the trial court erred in finding that the income they received under AK Steel's SERP plan was subject to Middletown income tax. Resolution of this assignment of error turns on whether SERP payments constitute "pension" proceeds or "deferred compensation." MCO § 890.03(h)(1) excludes pension income from municipal taxation, whereas "earnings designated as deferred compensation" are taxable under MCO § 890.03(a)(2) and MCO § 890.02(a)(26). Middletown's ordinances and regulations do not define the term "pension." Nor do they define "deferred compensation." The tax code simply exempts "pension" income from taxation while making "earnings designated as deferred compensation" taxable.
 {¶ 37} On appeal, Wardrop and Hritz contend the trial court erred in equating a *Page 15 
"pension" with a "qualified retirement plan" under the Internal Revenue Code and then relying on a Treasury Regulation discussing qualified Retirement plans to find that the SERP was not a "pension" under MCO § 890.03(h)(1). To define a "pension" under the Middletown ordinance, appellants urge us to borrow ERISA's definition of a "pension plan" as "any plan, fund or program * * * established or maintained by an employer or by an employee organization, or by both," that "provide[s] retirement income to employees" or "results in a deferral of income by employees for a period extending to the termination of covered employment or beyond[.]" 29 U.S.C. § 102(2)(A). Appellants contend the SERP is a "pension plan" under ERISA's definition. Applying this definition, they argue that the SERP payments similarly should be treated as tax-exempt "pension" income under MCO § 890.03(h)(1).
 {¶ 38} Upon review, we reject appellants' argument. One problem with relying on ERISA's definition of a "pension plan" is that it includes a plan that "results in a deferral of income by employees." Thus, ERISA's definition of a "pension plan" appears to include at least some deferred compensation plans. As noted above, however, the Middletown tax code expressly distinguishes tax-exempt "pensions" from taxable "earnings designated as deferred compensation." Although Middletown's ordinances do not define a "pension" or "deferred compensation," they are treated differently and plainly are not the same thing under the city's code. Therefore, we find limited use in applying an ERISA provision that defines a pension plan as including a deferred compensation plan.
 {¶ 39} In any event, to determine whether payments made under AK Steel's SERP plan are taxable by Middletown, we need only to examine the language of the plan and the city tax code. Article I of the SERP plan itself identifies it as "an unfunded deferred compensationarrangement maintained by the Company for the purpose of providing supplemental retirement benefits for a select group of management or highly *Page 16 
compensated employees[.]" (Emphasis added.) Middletown's code authorizes a tax on "qualifying wages, commissions, other compensation, and other taxable income[.]" MCO § 890.03(a)(2). The code defines "other compensation" to include "earnings designated as deferredcompensation." MCO § 890.02(a)(26) (emphasis added). Because the SERP plan describes itself as a "deferred compensation arrangement" and Middletown's ordinances impose a tax on "earnings designated as deferred compensation," the trial court correctly concluded that SERP payments are not exempt from municipal taxation.
 {¶ 40} In their reply brief, appellants note that a trust agreement for several AK Steel Retirement plans makes a short-hand reference to the SERP plan as "the `Pension Plan.'" The same trust agreement also reiterates, however, that the SERP plan is "an unfunded plan maintained for the purpose of providing deferred compensation for a select group of management or highly compensated employees[.]" Appellants also point out that section 7.3 of the SERP plan is captioned "Offset for Other Pensions," thereby implying that the SERP itself is a "pension." But another provision, section 9.7, cautions that "[t]he captions to the articles, sections and paragraphs of this Plan are for convenience only and shall not control or affect the meaning or construction of any of its provisions." Finally, appellants assert that the SERP payments were a supplement to pension benefits they received under an AK Steel defined-benefit pension plan. Be that as it may, the SERP plan still designates itself as a "deferred compensation arrangement," thereby rendering the supplemental payments at issue taxable by Middletown to the extent they constituted "income earned * * * by nonresidents for work done on services performed or rendered in the City." MCO § 890.03(a)(2). In other words, the SERP payments are taxable, subject to apportionment as set forth in our analysis of appellants' first four assignments of error. The sixth assignment of error is overruled. *Page 17 
 {¶ 41} In their seventh assignment of error, appellants contend the trial court erred in finding that the appreciated value of their nontransferable stock options and restricted stock was subject to Middletown's income tax.
 {¶ 42} Although appellants received the stock options while employed by AK Steel, they did not exercise them until after resigning in 2004. Wardrop and Hritz point out that the exercise price of the options exceeded the market price of AK Steel stock on the date of their resignation. In other words, the options were "under water" at that time. Thus, all of the profit appellants realized when they exercised the options in 2004 was attributable to post-employment appreciation in the value of AK Steel stock. Because appellants did not work or reside in Middletown when this appreciation occurred or when they exercised the options, they insist that the profit was not subject to taxation under MCO Chapter 890. Wardrop and Hritz make a similar argument regarding their sale of restricted stock. Although they obtained the restricted stock during their employment with AK Steel, the restrictions did not expire until after their resignation in 2004. Because they did not work or reside in Middletown when the restrictions expired, appellants assert that Middletown lacked the authority to tax the profit from their sale of the restricted stock.
 {¶ 43} Upon review, we find appellants' argument to be unpersuasive. As set forth above, MCO § 890.03(a)(2) imposes a municipal tax "[o]n all * * * compensation and other taxable income earned or received * * * by nonresidents for work done or services performed or rendered in the City." The trial court correctly determined that the stock options were a form of compensation earned by Wardrop and Hritz for work done on behalf of AK Steel. Rice v. City of Montgomery (1995),104 Ohio App.3d 776, 781. The only real question "is when and how to measure the value" of the stock options. Id. In Rice, the First District Court of Appeals addressed that issue as follows:
 {¶ 44} "* * * Quantifying the value of a stock option at the time of its grant is a *Page 18 
complex task, subject to the vagaries of market forecast and compounded by the fact that no ready market can exist for nontransferable stock options. The I.R.S. resolves the difficulty of valuing a nontransferable stock option by waiting until the option is exercised, at which time there is a recognition of income equal to the difference between the option price and the fair market value of the stock at the time of the exercise. At the moment that the income is recognized, a fair market value can be assigned to the stock option.
 {¶ 45} "During oral argument the city of Montgomery proffered that it had chosen to take the same course as the I.R.S., in other words, waiting until the stock option was exercised, to avoid the difficulty and speculation involved in trying to assess the anticipated appreciation in stock price at the time of the option's grant.
 {¶ 46} "We find nothing in the general law of Ohio or in the city of Montgomery tax ordinance and regulations which precludes the city taxing authority from employing the same methodology of valuing a stock option as does the I.R.S." Id. at 781.
 {¶ 47} In our view, the foregoing analysis is equally applicable here. Wardrop and Hritz earned compensation in the form of stock options while working for AK Steel. Middletown could tax this compensation to the extent it constituted "income earned * * * by nonresidents for work done or services performed or rendered in the City." MCO § 890.03(a)(2). Middletown necessarily had to wait until the option-exercise date to assign a value to the compensation, however, because the value of the options could not be determined until then. Although Wardrop and Hritz did not reside or work in Middletown when they exercised the options, the fact remains that they earned the stock-option compensation while working for AK Steel. Therefore, MCO § 890.03(a)(2) authorized Middletown to tax the resulting gain, which could be calculated only when appellants exercised the options.
 {¶ 48} In reaching the foregoing conclusion, we reject appellants' attempt to *Page 19 
distinguish Rice on the basis that the taxpayer there was a resident of the city of Montgomery. We have relied on Rice for two general principles, neither of which depends on the residence of the taxpayer at issue: (1) stock options are a form of employee compensation and (2) a municipality may wait until the stock options are exercised to assign a value to the compensation. Appellants' observation that they neither resided nor worked in Middletown when they exercised the options is immaterial. Cf. McBroom v. Oregon Dept. of Revenue (1997),14 Or. Tax 239, 241-243, affirmed (1998), 328 Or. 15, 969 P.2d 380 ("Options which cannot be transferred, exercised immediately, or are subject to cancellation, do not have a readily ascertainable value and thus are taxed only when exercised. * * * However, plaintiff contends that because he was a nonresident when he exercised the option, the income is not taxable by Oregon. * * * However, it is clear that the option was granted for services rendered or which were later rendered to Intel while he was a resident of Oregon. Accordingly, any value derived from the option had its source in Oregon. Where plaintiff was domiciled at the time of exercise is not relevant.") Regardless of appellants' place of residence at the time of exercise, the gain is taxable under MCO § 890.03(a)(2) to the extent that the options were granted for work done or services performed in the city.
 {¶ 49} We are equally unpersuaded by appellants' reliance on In reWhitpain (2008), 942 A.2d 959, a Pennsylvania appellate case brought to our attention during oral argument. At issue in Whitpain was whether stock options granted to a nonresident taxpayer during his employment within a township but exercised after he had terminated that employment were subject to the township's tax. Although Whitpain is factually similar to the present case, Middletown notes that the language of the relevant statutes and ordinances in that case differs significantly from the language of MCO. § 890.03(a)(2). The legislation at issue inWhitpain authorized a municipal tax on compensation received *Page 20 
by individuals residing or employed within its territorial limits. TheWhitpain court concluded that stock option compensation was not received until the options were exercised. Because the taxpayer inWhitpain neither resided nor worked in the township when he exercised his options, the court reasoned that his gain was not subject to municipal tax.
 {¶ 50} In the present case, the applicable ordinance imposes a tax on compensation "earned or received" by nonresidents "for work done or services performed or rendered in the City." MCO § 890.03(a)(2). Wardrop and Hritz earned their stock option compensation at least in part for work performed in Middletown. Therefore, it was taxable under the ordinance. The only issue is how and when to value the compensation. Based on the reasoning set forth above, we believe the trial court properly valued the compensation at the only time possible — when Wardrop and Hritz exercised the options.[3]
 {¶ 51} We reach essentially the same conclusion with regard to the restricted stock. Appellants do not appear to dispute that restricted stock is a form of compensation. Moreover, as with the stock options, we believe Middletown acted *Page 21 
properly in waiting until the restrictions expired to place a value on the compensation. For purposes of determining Middletown's authority to tax the gain from the sale of the restricted stock, the relevant inquiry is not where appellants resided when the restrictions expired. Rather, the proper inquiry under Middletown's tax code is the extent to which the restricted stock constituted compensation "earned or received" by Wardrop and Hritz "for work done or services performed or rendered in the City." MCO. § 890.03(a)(2). Based on the reasoning set forth in our analysis of appellants' first four assignments of error, they are entitled to have the gain from their sale of the stock options and restricted stock apportioned based on the time they spent working within the city when the options and restricted stock were earned. Appellants' seventh assignment of error is overruled.
 {¶ 52} Having sustained appellants' first, second, and fourth assignments of error, we hereby affirm in part and reverse in part the judgment of the Butler County Common Pleas Court and remand the cause for further proceedings consistent with this opinion.
WOLFF, J., and FAIN, J., concur.
Hon. James A. Brogan, Hon. William H. Wolff, Jr., and Hon Mike Fain, judges of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3), Article IV, of the Ohio Constitution.
[1] The parties agree that the current version of MCO § 890.03(A)(2) only taxes nonresident income "for work done or services performed or rendered in the City." In Toliver, this court observed that "[i]n May 1995, Middletown adopted Ordinance 95-057 that amended Section 890.03(a)(2) to add the language `or as a result of employment in the City.'" Toliver, supra, at n. 2. The Middletown City Council subsequently amended MCO Chapter 890 on April 6, 2004 with Ordinance 02004-28 and apparently deleted the language previously added in May 1995. (See Doc. #7, Transcript of Papers, Testimony, and Evidence Presented to Income Tax Review Board, at Exh. 11; see also Doc. #7, Stipulations of Fact at ¶ 34).
[2] We recognize the possibility, of course, that Article III(A)(2)(a) of the rules and regulations may have been drafted when MCO § 890.03(a)(2) did include language allowing taxation of nonresidents' income earned "as a result of employment in the City." It may be that Article III(A)(2)(a) simply was not changed after the Middletown City Council amended MCO § 890.03(a)(2) to delete the phrase. In fact, that appears to be the case. The record contains an affidavit from Middletown Tax Superintendent Linda Stubbs, who avers that the rules and regulations "have not been amended to reflect the enactment of Ordinance No. 02004-28, adopted April 6, 2004." (Doc. #7 at Stubbs affidavit, ¶ 2).
[3] We also are unconvinced by appellants' reliance on In reStuckless (May 12, 2005), New York Tax App. Trib. No. 819319,2005 WL 1197503, a case cited in their brief. The Stuckless opinion relied on by appellants was withdrawn by the New York Tax Appeals Tribunal on August 17, 2006, upon rehearing of the case. See In re Stuckless (Aug. 17, 2006), New York Tax App. Trib. No. 819319, 2006 WL 2468525. In its new decision, the Tax Appeals Tribunal held that the state could not tax the profit from stock options a taxpayer obtained while living and working in New York but later exercised during a year that he neither resided nor worked in the state. Notably, Stuckless turned on the existence of state regulations that required allocation of stock-option income based solely on the number of days a taxpayer worked in New York in the year the option income was realized. Because the taxpayer inStuckless did not live or work in New York at all during the year when he exercised his options and realized the gain, the income was not subject to state tax. The Tax Appeals Tribunal also noted, however, that New York was not required to limit allocation based on the number of days a taxpayer worked in the state in the year he exercised his options. In fact, the tribunal observed that multi-year methods of allocation were used for the taxation of stock options in other jurisdictions. One possible method of allocation used the ratio of days worked in the state to total number of work days from the option-grant date to the option-exercise date. Although the New York Department of Tax and Finance had issued a memorandum adopting this method of allocation, which would have allowed taxation of some of the taxpayer's stock-option gain, the Stuckless tribunal held that the memorandum conflicted with state regulations. Unlike Stuckless, Wardrop and Hritz have cited no Ohio statute, ordinance, or regulation that would limit Middletown to considering only the number of days they worked within the city in 2004 when they exercised their options. *Page 1